## Tawney *versus* Long and Wife.

1. A disposing mind and memory exist, if at the time of making a will the testator has a full and intelligent knowledge and understanding of the act he is engaged in, of the property he possesses; an intelligent perception of the disposition he desires to make and the persons he wishes to be his beneficiaries. Per FISHER, P. J.

2. Although the general capacity of a testator may be unimpeached, if the will is the direct result of partial insanity or monomania without which the will would have been different, it cannot be sustained. *Id.*

3. Importunate persuasion from which a delicate mind would shrink will not invalidate a devise.

4. Undue influence to affect a will must be such as to subjugate the mind of the testator to the will of the person operating upon it.

5. To establish undue influence there must be proof of fraud, threats or misrepresentations, undue flattery, or physical or moral coercion, so as to destroy the testator's free agency operating as a present constraint at the making of the will.

6. Neither general bad treatment nor general kindness is evidence of undue influence, unless shown to be part of a crafty arrangement to procure the will.

7. Evidence in this case insufficient to show undue influence.

May 7th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Adams county :* Of May Term 1874, No. 64.

[Tawney *v.* Long.]

This was an issue framed October 21st 1872, to try whether a certain paper writing was the will of John Bowman, deceased. In the issue, John E. Tawney, the executor of the will, was plaintiff and Henry Long and Hannah Long, his wife, and daughter of the decedent, were defendants.

The questions in the issue were : whether the decedent was of sound mind, &c., when he executed the paper ; whether its execution was procured by duress ; whether it was procured by fraud and imposition on the decedent ; whether it was procured by undue influence.

The writing was dated October 28th 1871, at which time the decedent's wife was living, and also an only child Hannah, the wife of Henry Long (the defendants in this case) ; decedent's wife died in the early part of 1872 at the age of eighty-five years, and he died in August 1872 at the age of eighty-seven years.

By his will he bequeathed to Jacob Bowman, a nephew, $200, and the remainder of his estate, after payment of debts, he gave to John E. Tawney, whom he made executor of his will. Tawney was a nephew of decedent's wife, but otherwise in no way connected with him. His estate was worth from $1500 to $2000.

The case was tried February 9th 1873, before Fisher, P. J.

Plaintiff gave evidence by the subscribing witnesses of the execution of will ; these witnesses testified also that he was then of sound mind, memory and understanding.

The defendants gave evidence that about 1871, he and his wife had been living with the defendants and that the husband and he had difficulties about the payment for his boarding ; that he left Long's house, boarded in several other places and finally became an inmate of the plaintiff ; that his wife commenced a proceeding against him for her maintenance, in which the plaintiff became surety for his appearance at the Court of Quarter Sessions ; on the 25th of October 1871, he was sentenced by the court to pay a monthly sum for the support of his wife, and on the 28th, the day the will was executed, Tawney entered into recognisance with him for the performance of the order of the court. About the same time suit was brought against him by Long for payment for boarding him, in which he confessed judgment November 4th 1871.

The defendants gave evidence that the decedent constantly asserted that his wife maintained improper relations with Long, his son-in-law ; that Mrs. Long was not his child ; that she and his wife were prostitutes and treated him with great unkindness ; and gave evidence generally for the purpose of showing that he was monomaniac as regarded them ; they gave evidence also for the purpose of showing that his mind and memory had become impaired and that he was incompetent to make a will.

For the purpose of establishing undue influence by Tawney the plaintiff, they gave evidence, that the decedent lived with the plaintiff ; that plaintiff was with him in all the litigation, attended to the

business for him, accompanied him to the office of his counsel, &c. ; that in a conversation about the management of his farm which was occupied then by Long, he said that Tawney was his agent, he had nothing to do with it, and that Tawney told him Long was too dumb to manage his own affairs.

Long, the defendant, testified, under objection and exception :—

" About a year before he left me he came from Tawney's, and he said it is nothing but ding dong all the time, by Tawney and his family, for me to make a will and leave all I have to them. He said Mr. Tawney went further than he had any business to do, and I told him so to his face ; them papers are destroyed now ; and I made the old man no answer to this.   He added, he could not catch me, as long as I have my senses ; I will never make a will ; he cannot catch me."

Mrs. Long testified, under objection and exception : " In the year 1871, between spring and harvest, I can't state particularly, but before the lawsuit, the old man said John E. Tawney was dingdonging at him to make a will, and he said he was not going to make one as long as he had his senses.   He said Tawney said he should will it to him, and that he had a family and we have none.   At another time, but the same time he was there, he said Mrs. Tawney would take him around the neck, kiss him and say : Dear uncle, will me all you have ; Hannah does not need it and did not work for it ; Aunty worked for it. * * *

" About a month or so before the lawsuit he said Tawney had gone further than he had any business to do, and he told him so to his face, and Tawney owned to it, and that he had all now in his own hands and was going to keep it."

Michael Deener testified :  " Sometime since Bowman died Tawney told me, in the shop, the old man wanted to make a will and he would like to give Jake some and hardly knew how to fix it.   Then Tawney said he told him, pay your debts and afterwards you can do what you please."

The plaintiff gave evidence in rebuttal.   He testified amongst other things, speaking of the proceedings against decedent for the maintenance of his wife, * * *  " We came back on the 20th.   Mr. Wills prepared the papers ; we came out to the office.   Mr. Bowman paid from 1st of April to 1st of November the allowance, and the costs were not paid.   After that Bowman called me back into the office and told me he had made up his mind to make a will.   He always thought he might give Jake something.   He told me the way he was fixed he did not know what to do about it.   He asked me what he ought to do about it.   I told him if he wanted to give Jake something he could make it so that his debts and funeral expenses should be paid first, and then he could give Jake whatever he had a mind to ; if nothing was left, there would be no harm done.   He then went over into the prothonotary's office.   He told

[Tawney v. Long.]

me if I had any business to attend to I should do it and meet him at Mr. Ramer's hotel. I left then and met him at Ramer's hotel about two hours after. Then we started home. I did not, at that time or at any other time, ask him to make a will in my favor. I never asked him to make a will at all. On the way home he handed me the will to take care of. He told me I should keep it, and he wanted me to take care of him, and he supposed if there was anything left I would get it. It was in an envelope, not sealed."

On cross-examination plaintiff testified : " John Snyder and I had a conversation outside of the court-house about the trouble the old man had about his suit, and he seemed to be very much confused, and then I said in answer to Snyder, who said he was not fit to make a will, that he was not. Mr. Snyder broached the subject to me. Mr. Snyder and I met on the court-house steps, and he said to me that this thing, meaning the suit, seemed to trouble the old man uncommon. I replied that it did, and that his mind was much confused or out of fix. Mr. Snyder then said if the old man would want to make a will he did not believe it would stand. I told him I thought not. We spoke in reference to his condition that day. I did not say to Michael Deener, I told the old man to give Jake $200. The day before we came to town, I had a conversation with the old man about making the will. He told me in front of his room he had been thinking about making a will and fixing his things ; he did not know whether he could make a will or not ; that if he got like old Mr. Slagle his property might not reach to keep him. I told him if I was in his place I would take the good of what I had while I lived, and if there was anything left it was his own and he could do with it as he pleased." * * *

The foregoing is all the evidence which bears upon the question of undue influence by the plaintiff upon the decedent in connection with his will.

The plaintiff's sixth point and its answer were :—

Point : " The defendants have given no sufficient evidence to sustain their allegation that the will was obtained by duress, fraud, imposition or undue influence, and therefore the jury cannot find in favor of the defendants on these issues."

Answer : " There has no evidence been given in this case to prove that the alleged will of the testator was made under duress or by fraud or imposition, but whether it was obtained by undue influence is a matter submitted by the court to the jury under the evidence given in this case, and the instructions of the court as to what in law will constitute undue influence sufficient to destroy the validity of a testamentary instrument."

The defendants' fourth and sixth points and their answers were :—

[Tawney *v.* Long.]

4th : " In ordinary cases the undue influence necessary to invalidate a will is a constraint operating upon the testator at the time of the testamentary act which destroys free agency; but less influence is required to control the mind of a testator and avoid a will, when the testator is enfeebled in mind, and very aged and infirm, than is required to control the will of one of mental vigor. And if the jury believe the testator was very aged and infirm, and enfeebled in mind, and that John E. Tawney, no relation by blood to testator, importuned him to make a will and leave all his property to him, and was his confidential agent and conducted his business for him, and encouraged him in his conduct towards his wife, and controlled the old man, his papers and effects, shortly before the alleged will was made, and brought him to the attorney where the will was written, and the principal part of the estate is devised to him, this raises a presumption of undue influence, and direct proof of it at the time of the execution of the will is not required to render the will invalid."

Answer : " If the facts are as stated in the point, they are circumstances that are to be taken into consideration by the jury in considering the question of undue influence, but alone do not raise a conclusive presumption of undue influence."

6th : " Where the party to be benefited by the will has a controlling agency in procuring its formal execution, it is universally regarded as a very suspicious circumstance and one requiring the fullest explanation."

Answer : " This is not correct, but is to be considered as a circumstance amongst others tending to prove undue influence."

The court charged :—

" This case is an issue directed by the Register's Court to the Court of Common Pleas of Adams county to try whether or not. certain instruments in writing, alleged to be the last will and testament of John Bowman, deceased, late of this county, is his will or not. It is contended that Mr. Bowman, from age and infirmity and weakness of mind, had not the capacity to make a will at the time he signed the instrument in question; that the instrument asked to be established was obtained by duress, fraud, imposition and undue influence, and that the testator was under an insane delusion as regards the relations existing between his wife and son-in-law, Henry Long, one of the defendants.

" Before we say anything about the facts of this case we will state to you our views of the law relating to testamentary capacity and what is required to constitute an ability to make a valid last will and testament. A disposing mind and memory is one in which the testator is proved to have had, at the time of executing the will, a full and intelligent knowledge and understanding of the act he is engaged in, a full knowledge of the property he possessed, and an intelligent perception and understanding of the

[Tawney *v.* Long.]

disposition he desires to make of it, and the persons he wishes to be beneficiaries of his will and the recipients of his bounty. His mind and memory may be impaired by age or disease, but if enough intellect remains to fill the requirements above stated; advanced age, and infirmity of body, or impairment of the original mental force, will not incapacitate a man from making a valid disposition of his property by a testamentary instrument.

" By law every person has the right to dispose of his or her property as he or she thinks best, if they are of proper age and disposing mind and memory, and it is not so much the disposition that is made, as the fact that it was freely and voluntarily done, which constitutes the inquiry, in cases in which it is contended the will was procured by undue influence. There can be no invalidation of a will for undue influence, if the party is a free agent; if he has a will to act, and an ability to act in the matter as he desires and pleases, and does so act. The undue influence which will invalidate a will, is such as destroys the testator's free agency, and prevents him from making any other disposition of his property, than that which the person who exercises the control over him chooses to dictate. The influence must be operative at the time the will is made and must be the effect of, and be produced by, undue influence. Solicitations to make a will, persuasions to make a will in a particular way, will not constitute undue influence, so long as the party making it remains a free agent and acts as he desires to act in the matter.

" A man may be of sound mind in regard to his dealings in general, but may be under an insane delusion, and whenever it appears that the will was the direct offspring of the partial insanity or monomania under which the testator was laboring at the very time the will was made, that it was the moving cause of the disposition, and that if it had not existed the will would have been different, it ought to be considered as no will, although the general capacity of the testator may be unimpeached.

" The wife and children of a man are the natural objects of his affections, and where they are disinherited by a husband and a father, when he comes to dispose of his estate, the reasons for doing so are a proper subject to enter into the consideration of a jury, in considering a case like the present, and any person will naturally inquire, why was this thing done ? Was the testator under an insane delusion, or has some powerful cause induced him thus to act ?

" If a monomaniacal delusion is unalterably entertained by a testator against a wife or a daughter, who otherwise would have been his legatee or devisee and who would seem to be the natural objects of a man's regard when he came to make a final disposition of his estate; and such delusion is shown to have been the operating motive which excluded them; and if the supposed act or

[Tawney *v.* Long.]

misconduct on the part of the wife or child, or both, had no exist-
ence in fact, and was a creature of the diseased imagination of the
testator, and the will was engendered by this delusion and was its
offspring, and made under its influence operating at the time and
in the testamentary act; if, in short, the will was dictated by the
delusion, it cannot be sustained as a last will and testament, be-
cause it is the production of a mind incapable of correct reasoning
as to the object of his bounty and the character of his wife and
children, and their relations towards himself. * * *"

The court then referred to the evidence and continued :—

["As regards the undue influence said to be exercised by Mr.
John E. Tawney over the testator, you have heard the testimony
on both sides of the question, as also the evidence of acts of mis-
conduct and disrespect towards Mr. Bowman by his daughter and
her husband, and on the whole of the evidence and the law as stated
to you by the court, you will decide the question of undue influence
—remembering that it must be operative at the time the will was
made and was the cause of the will, and without the operation of
the undue influence a different disposition of the testator's property
would have been made, and that the undue influence prevented
it.]

"The leading point in this case seems to me to be, whether the
testator, at the time he made his will, was laboring under an insane
delusion as regards the relations that existed between his wife and
son-in-law, Henry Long, and Mr. Long's conduct in relation to
it." * * *

After again referring to the evidence, the court said :—

"From the testimony of Mr. Deatrich, that of Moses Hartman,
and that of the defendants, it is contended that the will was made
under the insane delusion that the wife of the testator, a woman
over eighty years of age, and who had lived with the testator for
perhaps half a century, was the paramour of his son-in-law, Henry
Long, one of the defendants. If the testator, at the time he made
the will in question, without any foundation to rest it upon, labored
under the idea that such a state of facts existed, it was a most
monstrous assumption and could only be the creation of an unsound
mind, and any testamentary disposition made under the influence
of such a delusion is not worth the paper it is written upon, and
ought not to be established as a last will and testament.

"The jury will then inquire, was the paper in question the off-
spring of such an insane delusion? And in determining the ques-
tion, they will ascertain from the evidence whether or not such a
delusion existed. * * *

"If the jury find, from the evidence, that Mr. Bowman labored
under the insane delusion that his wife, over eighty years of age,
had illicit intercourse with her son-in-law, and Mr. Long allowed
it, or did not discourage it, and under the influence of this insane

[Tawney v. Long.]

delusion, it operated upon him at the moment he made the will, and it induced him to disinherit his only daughter and child, and give nothing to his wife, the will ought not to be sustained, and your verdict ought to be for the defendants." * * *

The verdict was for the defendants.

The plaintiff took a writ of error.    He assigned for error

1, 2.  Admitting of evidence of. declarations of the decedent to Mr. and Mrs. Long as to plaintiff's importunity with decedent to make a will.

3. The answer to plaintiff's sixth point.

4, 5. The answers to defendants' fourth and sixth points.

6. The part of the charge in brackets.

*R. G. McCreary*, for plaintiff in error.—The declarations of testator may be admissible to show his condition of mind, but not as evidence of the facts declared or stated, unless part of the *res gestæ*: Greenleaf Ev., sect. 108; Jarman on Wills 77.    The declarations proved do not tend to show undue influence operative at the date of the will.    The testimony of Henry Long related to a time eighteen months before the will was made, and that of Hannah Long six months before: Eckert *v.* Flowry, 7 Wright 46; McMahon *v.* Ryan, 8 Harris 329; Jarman on Wills 37, 41; Thompson *v.* Kyner, 15 P. F. Smith 368; Moritz *v.* Brough, 16 S. & R. 403.    They proved, at most, only persuasion or importunity, which, when established, do not constitute undue influence such as would avoid a will: Miller *v.* Miller, 3 S. & R. 267. The statements taken altogether show that the importunity had no effect on testator, and no conclusion of undue influence could be legitimately drawn from them: Evans *v.* Mengel, 1 Barr 68; Haines *v.* Stouffer, 10 Id. 363.

There is no other testimony in the case tending to sustain the allegation, and it is distinctly disproved by the plaintiff.    It is error to permit the jury to pass upon a matter of which there is no evidence, or to base a verdict on circumstances which do not justify their conclusion: Switland *v.* Holgate, 8 Watts 385; Sartwell *v.* Wilcox, 8 Harris 117; Kelly *v.* Kauffman, 6 Id. 351; Evans *v.* Mengel, 6 Watts 72; Urkett *v.* Coryell, 5 W. & S. 85.

*W. A. Duncan*, for defendants in error.—The decedent's declarations were admissible as circumstances tending to show undue influence: Rambler *v.* Tryon, 7 S. & R. 90; and although the acts had occurred a length of time previously to the execution of the will: Reeme *v.* Parthemere, 8 Barr 460; McTaggart *v.* Thompson, 2 Harris 153; Waterman *v.* Whitney, 5 N. Y. 165; 1 Redfield on Wills 115, 504, 509; Titlow *v.* Titlow, 4 P. F. Smith 221.    As to the answers to the points he cited Boyd *v.* Boyd, 16 P. F. Smith 294.    As to the sixth error: Eckert *v.*

Flowry, 7 Wright 46 ; Thompson *v.* Kyner, 15 P. F. Smith 368 ; 1 Jarman on Wills ; 1 Redfield on Wills 481 ; Zimmerman *v.* Zimmerman, 11 Harris 378 ; Dean *v.* Negley, 5 Wright 312.

Mr. Justice Gordon delivered the opinion of the court, October 12th 1874.

It is quite probable that in October 1871, the mind of John Bowman was so unsound as to be incapable of properly disposing of his estate by will. At all events there was evidence thereof sufficient to submit to a jury. On this branch of the case the ruling of the court was strictly correct. Not so, however, on that which relates to the question of undue influence, as an operative cause affecting the old man in the disposition of his property.

The evidence offered for this purpose was wholly insufficient, and should have been rejected.

In treating of this branch of the case, we must treat of it as a distinct issue, for if it be found that the testator was of unsound mind, then the question is determined against the will, and we proceed no further ; but if on the other hand this question be determined in favor of the testator's testamentary capacity, then, and then only, do we consider the proposition involving the subject of undue influence.

However, then, the fact may be, and that fact is hereafter to be determined by a jury, we must, for the present purpose, treat the case as though the testator's sanity were proved. What then is there in the evidence to show that John E. Tawney improperly influenced John Bowman in the disposition of his property ? That he treated the old man, who by marriage was his uncle, with kindness ; that he permitted him to remain at his house ; that he bailed him and assisted him when sued by his wife and son-in-law, indicates but ordinary acts of friendship, towards a frail old man, rendered necessary from the very circumstances thrown around him by the defendants themselves, but in nothing does it exhibit that corrupt and unlawful influence which amounts to constraint, and which substitutes the will of another for that of the testator. So we have no evidence, except that of Tawney himself, that Bowman ever spoke to him, or he to Bowman, about a will. We give *in extenso* what he says upon that subject. "The day before we come to town, I had a conversation with the old man about making the will. He told me in front of his room he had been thinking about making his will and fixing his things. He did not know whether he could make a will or not, that if he got like old Mr. Slagle, his property might not reach to keep him. I told him if I was in his place, I would take the good of what I had while I lived, and if there was anything left it was his own, and he could do with it as he pleased."

Again : "After that Bowman called me into the office and told

[Tawney *v.* Long.]

me he had made up his mind to make a will. He always thought he might give Jake something. He told me the way he was fixed he did not know what to do about it. He asked me what he ought to do about it. I told him if he wanted to give Jake something, he could make it so that his debts and funeral expenses should be paid first, and then he could give Jake whatever he had a mind to; if nothing was left, there would be no harm done."

This testimony does not even raise the idea of solicitation, much less that of improper or fraudulent conduct upon the part of Tawney. It contains but the advice one prudent and cautious neighbor might give to another under like circumstances.

Then we have the declarations of the testator himself, as found in the testimony of Henry Long and his wife; "that John E. Tawney was dingdonging at him to make his will, and leave all he had to him and his family."

But these declarations prove nothing but such solicitations as do not affect the validity of a will. Even importunate persuasion from which a delicate mind would shrink, will not invalidate a devise: Miller *v.* Miller, 3 S. & R. 267. But beyond this these declarations are too remote from the time of execution, and are not so connected with other facts and circumstances indicating circumvention or fraud in the procurement of the will as to make them part of the *res gestæ*, and are therefore not evidence: 2 Greenl. Ev., part 4, sec. 690; McTaggart *v.* Thompson, 2 Harris 149.

We cannot think, therefore, that all this evidence taken together was sufficient to raise such a question of undue influence as should have been submitted to the jury. Undue influence, of that kind which will affect the provisions of a testament, must be such as subjugates the mind of the testator to the will of the person operating upon it, and in order to establish this, proof must be made of some fraud practised, some threats or misrepresentations made, some undue flattery, or some physical or moral coercion employed, so as to destroy the free agency of the testator, and these influences must be proved to have operated as a present constraint, at the very time of making the will. But constraint is not to be inferred from mental weakness alone, though the weak mind may be more readily constrained and deceived than the strong one; and though it is to be considered as a fact in determining the question of constraint, nevertheless, as is said in McMahon *v.* Ryan, 8 Harris 329, that undue influence, which suffices to destroy an alleged will, is distinct from weakness and has no necessary connection with it.

So it has been held that general bad treatment furnishes no evidence of such influence, and we may add, neither does general kindness, though this may have a powerful influence upon a weak mind, unless it is shown to be part of a crafty arrangement to procure the testamentary disposition: Thompson *v.* Kyner, 15 P.

[Tawney *v.* Long.]

F. Smith 368; Rudy *v.* Ulrich, 19 P. F. Smith 177; Eckert *v.* Flowry, 7 Wright 46.

From the above statement, it is obvious that the case in hand is utterly barren of evidence tending to show undue influence as the cause which operated on the mind of John Bowman to produce the disposition of his property complained of by the defendants. It follows that the court erred in not answering the plaintiff's sixth point in the affirmative.

Judgment reversed, and a *venire facias de novo* awarded.