# HENRY TROST ET AL. v. CATHARINE DINGLER ET AL.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued October 28, 1887—Decided January 3, 1888.

Where testamentary capacity at the time of making a will is undoubted, and the will is drawn by a scrivener of the testator's own selection, in the presence of the testator and of the attesting witnesses and in the absence of the beneficiaries, the undue influence, however used, which will avoid it, must be such as destroyed the free agency of the testator

at the time and in the very act of making the testament; solicitations, however importunate, cannot of themselves constitute such undue influence.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 135½ October Term 1887, Sup. Ct.; court below, No. 651 March Term 1886, C. P.

To the number and term of the court below an issue was framed upon the precept of the register of wills, wherein Catharine Dingler and others, who were the heirs at law of Gottlieb Weiss, deceased, were plaintiffs, and Henry and Margaretta Trost defendants, to determine the truth of objections filed to the admission to probate of a testamentary paper dated September 21, 1885, as the last will of said deceased, which objections were:

1. That there was undue influence used by the said defendants to induce the said decedent to make said alleged will in their favor.

2. That said alleged will was not the free expression of the will of said decedent, but was made by him while under duress and in the power of the said defendants.

3. That the signature of the deceased to said alleged will was procured by fraud and by false representations as to its contents.

In the said alleged will, dated as before stated, after providing for the payment of his debts and funeral expenses, the testator devised to Henry Trost and Margaretta, his wife, a two-story frame house, with lot of ground attached, in the 26th ward, Pittsburgh, " for their own proper use and behoof forever, for them taking care of me ; " and to the same persons he bequeathed and devised all his other estate, real, personal or mixed, " for their own proper use and behoof forever."

Gottlieb Weiss had been a soldier in the army. His wife died, and, becoming disabled, he was admitted to the Soldiers' Home at Dayton. While there he was granted a pension, receiving as arrearages about $5,000. In June or July, 1885, returning to Pittsburgh where he had resided, he went to board with Henry Trost, with whom he had been acquainted for about thirteen years. Soon after, he bought a house and

lot, and rented the house to Henry Trost, reserving for himself a front room down-stairs, and paid Trost $4.50 per week for his boarding and washing. While he lived, he suffered from a partial paralysis and was very feeble physically and helpless. The will was written, in the presence of the attesting witnesses and in the absence of the proponents, by B. A. Hartman, alderman, and the testator died about one month thereafter. The beneficiaries in the will were not related to the testator.

A number of witnesses, under objection and exception for the defendants, were admitted to testify for the plaintiffs as to conversations and statements by the deceased, expressing feelings toward the defendants the opposite of those which would lead him to make a will in their favor. The other material facts appearing in the testimony are sufficiently indicated in the charge of the court below and in the opinion of this court.

At the trial, on November 27, 1886, the Court, STOWE, P. J., charged the jury and answered the points presented as follows:

In this case, the simple question is whether this paper is the will of Gottlieb Weiss. There is no question about his capacity to make a will if left alone; that he had mind enough, and the only question for us is whether he was unduly influenced in the making of it.

A daughter, or son, or other relative, or a stranger, might by argument or solicitation induce a man to make a will in his or her favor, but if the testator was not put under any constraint or restraint, was merely urged, and the execution of the will was his voluntary act, it has got to stand and it don't make any difference whether the other heirs at law like it or not. If there be unlawful solicitation or argument or control which prevents the voluntary action of the testator, and substitutes the will of the party or parties controlling him, the will is not his and may be set aside.

If a man is in full health and life and vigor when he makes his will, the evidence to set it aside should be very strong, although he might take his property from his natural heirs and give it to strangers; but where a man is sick and weakly,

and particularly where he is under the control of the one in whose favor the will is made, a much less degree and quantity of proof is sufficient to justify the finding that improper influence has been used.   Where a man is shown to occupy a position of peculiar confidence to the testator, his special advisor, his intimate friend, controller, manager, if such a thing can be (and as it sometimes is) the law looks on a will giving the property to him, and taking it away from the natural heirs, with grave suspicion, and all of these matters are to be considered when the case gets before a jury.   Taking the evidence indicating that the will was made voluntarily, and that tending to show it was made under duress, the jury must arrive at such a conclusion as they think it all warrants.

In this case the evidence seems to show, and it is not controverted, that the will was made and signed voluntarily so far as what occurred at the time of its execution is concerned. The scrivener says that it was voluntarily signed, there was no actual physical control at that time.   No one took the testator's hand when he was not conscious and made the mark for him.   He seemed to know what he was doing.   One of the witnesses says he rather reproached Weiss for not giving him anything and Weiss gave him $5.00.   The testimony all tends to show that whatever may have been the influence acting on the man's mind to induce him to make the will there was no physical control exercised at the time of its execution, but that wont justify you in saying it is Weiss's will.   That might be true and yet from fear, apprehension, by reason of what had been done before or that which he was afraid might follow, Weiss may have done as he did and that is really the test of whether this is his will or not.   [There must be evidence when you take the whole case together which reasonably satisfies you that the suspicion, which otherwise might be aroused or created from the fact of this old man being in the custody and general charge of these people, is unfounded, that the will was made voluntarily and not under compulsion by them.   We say as a matter of law that you are to look on the making of this will with some suspicion, but don't understand me as saying you should strike it down.   You should go into the examination of the case with the impression or suspicion that probably something was wrong about the will

taking, as it does, all the property away from the natural heirs.][13] You will then consider the other side of the case. The defendants have produced witnesses who testified that when the testator was alone with them he said what he intended to do, and that his intentions were in exact accordance with the will he made. He not only told them what he intended to do, but he gave his reasons, that his sisters didn't care for him and he didn't care for them; he intended to help those that helped him, etc. All of these matters are for the jury to consider. If true, these facts would relieve the defendants from any suspicion connected with the making of the will, and would show that the very object the testator intended to be carried out long before he made his will, and at the time he made it, was actually carried out.

Points submitted by plaintiffs:

1. If the jury believe from the evidence that the deceased, Gottlieb Weiss, before the making of his will, was sick, weak, and helpless, that he was under the sole care and control of the defendants, Henry Trost and Margaret his wife, that they, or either of them, urged and troubled him to make a will in their favor, and that finally in order to get rid of their importunities and in order to purchase peace, he was induced and felt forced to make the will that he did, contrary to his real wishes and desires, then they must find for the plaintiffs.

Answer: Affirmed.[5]

2. If they believe from the evidence that the defendants, or either of them, took advantage of the weak condition of Gottlieb Weiss, he being sick and helpless, to trouble him with frequent and urgent importunities to make a will in their favor, and that these urgings were so constant and so troublesome as finally to force him to a compliance in order to purchase peace, this would be the exertion of such undue influence as to make the will invalid, and the verdict must be for the plaintiffs.

Answer: Affirmed.[6]

3. If the jury believe from the evidence, that the will, at the time of its execution, was not fully explained to the deceased Gottlieb Weiss, so that he did not fully understand its contents, the will would be invalid, and the verdict must be for the plaintiffs.

Answer: Affirmed.[7]

4. Even if they believe from the evidence that it had been the intention of the deceased Gottlieb Weiss to devise to the defendants his real estate, yet, if they also believe that he had not intended to leave them also his personal property, and that the clause in the will relating to the personal property had not been fully explained to or understood by him before the execution of the will, then the whole will would be invalid, and the verdict must be for the plaintiffs.

Answer: Affirmed, so far as this issue is concerned.[8]

5. If the jury believe, from all the evidence in the cause, that Gottlieb Weiss was prevented from making his free will, and was influenced and controlled by Henry Trost and his wife, and compelled by their control to make such a will as they desired, then such was not his last free will and testament.

Answer: Affirmed.[9]

Points submitted by defendants:

1. That, under the law and all the evidence in the cause, the verdict should be for the defendants.

Answer: Refused.[10]

2. It having been shown that the will in controversy was executed with due solemnity and adopted by Gottlieb Weiss, the testator, by affixing his mark thereto, the presumption of law is, that the will is a good and valid one, and that the burden of proving that it was executed under undue influence is on the plaintiffs who allege it, the degree of proof necessary being that which will fairly and fully establish the allegation made.

Answer: This is a correct statement of the general rule of law, but requires some explanation under the evidence in this case. [The court reads from Boyd v. Boyd, 66 Pa. 293, from "Undue influence," etc., to the end of the paragraph.] Applying this rule to the facts of this case: The clear evidence is, that Gottlieb Weiss was an invalid and cripple; that he was dependent, when in the house of the defendants, upon their attention for food and drink, and all those attentions which enabled him to attend to ordinary wants of nature. He was then alone in their general charge and custody. He was weak and suffering. His heirs at law seem to have had little,

if any, intercourse or communication with him for some time before the making of the will. He was more or less at the mercy of the defendants. Now, under such circumstances, the rule of law is, that a will devising all of a man's property, or even a considerable portion of it, to a stranger to his blood, should be looked upon with suspicion, and this should receive the fullest explanation by the evidence on the part of the proponents of the will. The defendants, however, allege they have done all of this. They point to evidence showing the fact that the testator was helpless and almost deserted. That his sisters took no interest in his comfort or welfare, that they took him in and cared for him, and gave him attention of a most disagreeable nature necessary to his helpless condition, and that he, appreciating all these things, spontaneously, or at least voluntarily and freely, made this will to show his gratitude and compensate them for their kindness to him in his helplessness. The point is then affirmed, but the jury must look at all the evidence showing the peculiar situation of the testator so far as being improperly or unduly influenced by the defendants, in connection with such evidence as there may be directly tending to show that undue influence was actually used on the one side, and all the evidence tending to show the will was the voluntary act of Weiss, and the reasons for so making it. If, upon the whole, you think the will was made as Weiss actually desired it to be, and was the result of his own wishes uncontrolled by defendants, or either of them, then your verdict should be for defendants.[11]

3. Undue influence of the kind which will affect the provisions of this will, must be such as subjugated the mind of the testator to the will of the defendants; and in order to establish it proof must be made of some fraud practiced, some threats or misrepresentations made, some undue flattery, or some physical or moral coercion employed, so as to destroy the free agency of the testator, Gottlieb Weiss, and these influences must be proved to have operated as a present constraint at the very time the will was made; and unless the jury find from all the evidence in the cause, that such influence was used by the defendants upon the testator at the time and in the manner as hereinbefore set forth, their verdict must be for the defendants.

Answer: Affirmed, subject to the explanation to the second point.[12]

Charge of Court below.

As you have already discovered and as it is hardly necessary to say the great difficulty in deciding cases arises from the uncertainty of human testimony. If we knew exactly how much and what of a witness's story could be believed, we would have very little trouble in arriving at conclusions; but every case, as a general rule, involves a dispute as to facts and particularly a case of this kind. The witnesses on one hand testify to that which would indicate that a great outrage had been perpetrated on the old man. On the other hand the defendants bring in witnesses who make it perfectly clear that this is a bona fide will; that Weiss carried out what he intended at the time and what had been his intention before. That testimony may be reconciled. Weiss may have been a little under the influence of liquor and said things he didn't mean; he might have called ugly names and done that which would tend to show, having done that which was inconsistent with that state of mind, the will was not what it would have been if he had been left alone.

On the other hand, you have testimony from witnesses who seemed to be reliable that would indicate a different state of facts; amongst other things they testify that he declared his intention from time to time to make the will just as he did. Starting as I said before with the doubt or suspicion, if you choose to use the word, as to whether this is the will of Weiss, look at the testimony on the one hand tending to show it is not; then at the evidence on the other side tending so strongly, as it seems to do, to show it is, and arrive at the best conclusion you can. If you think on the whole Weiss made the will without any illegal constraint or control over him you ought to find for the defendants; but if you think it was not the will of Weiss, that it is a will injected into him by the process claimed by the plaintiffs here, that he was induced to make it by an undue influence exercised over him, you ought to find for the plaintiffs.

The verdict of the jury was for the plaintiffs. A motion and reasons for a new trial being argued, and new trial refused, judgment was entered upon the verdict. Thereupon the defendants took this writ, assigning for error, inter alia:

5–9. The answers to the plaintiff's points.[5 to 9]

10–12. The answers to the defendants' points.[10 to 12]

13. The part of the charge embraced in[ ][13]

*Mr. W. B. Rogers* and *Mr. T. H. Davis*, for the plaintiffs in error:

1. General bad treatment furnishes no evidence of undue influence; neither does general kindness, unless it is shown to be part of a crafty arrangement to procure the testamentary disposition: Tawney v. Long, 76 Pa. 115. The declarations of a testator respecting the conduct of the proponent, whether made before or after the execution of the will, are not competent evidence of undue influence: Harrison's App., 100 Pa. 467; Rushing v. Rushing, 36 N. J. Eq. 603; Pemberton's Will, 4 Atl. R. 770; Jackson v. Kniffen, 3 Johns. 31; Mays v. West, 37 Ind. 21. Declarations of a testator prior or subsequent to the execution of the will, are mere hearsay, and inadmissible to control its construction or destroy its validity: Linton's App., 104 Pa. 238; Stevens v. Vancleve, 4 Wash. C. C. 62; Redf. Wills, 445-6-7; Provis v. Reed, 5 Bing. 435.

2. Importunate persuasion from which a delicate mind would shrink, will not invalidate a devise. The undue influence necessary to invalidate a will, must be such as to subjugate the mind of the testator to the will of the person operating upon it, and must be proved to have operated as a present constraint at the very time of making the will: Tawney v. Long, 76 Pa. 115. Weakness alone will not invalidate a will if mind and memory exist sufficient to understand the subject in hand, and to direct intelligently the dispositions desired to be made: Thompson v. Kyner, 65 Pa. 379; Harrison's App., 100 Pa. 468.

3. The will was dictated by the testator, written in his presence by a scrivener of his own selection, and executed when he was at the very time thereof, of sound mind. It therefore has all the requisites of validity: Hess's App., 43 Pa. 73; Hoshauer v. Hoshauer, 26 Pa. 404; Harrison's App., 100 Pa. 468. There was no evidence tending legitimately to prove fraud or undue influence at the time of the execution and the court erred in submitting the question to the jury: Eckert v. Flowry, 43 Pa. 52; Cauffman v. Long, 82 Pa. 72.

Boyd v. Boyd, 66 Pa. 293, in its facts was entirely dissimilar, and its rule is inapplicable: Wilson's App., 99 Pa. 549.

*Mr. A. B. Hay*, for the defendants in error:

1. Latitude is allowed in the admission of evidence in cases involving fraud. Practically, the declarations of the testator, as to his feelings towards the beneficiaries, were proven to have run during the whole time of his residence with them. The defendants availed themselves of the same latitude as to the feelings, state of mind and declarations of the testator, to the fullest extent.

2. The evidence (reviewed) was sufficient to establish undue influence operating at the time of the execution of the will. The fact was so found by the jury.

OPINION, MR. CHIEF JUSTICE GORDON:

When Gottlieb Weiss made his will his soundness of mind and testamentary capacity were undoubted. Whilst his body was partially paralyzed, so that he was not able to help himself, mentally he appears to have been as active, determined, and vigorous as any of those by whom he was surrounded. The circumstances under which that will was drawn and signed were as favorable and as free from extraneous influence as could well be. It was drawn up on his own dictation by Alderman B. A. Hartman, and in the absence of the proponents; it was regularly signed and delivered to the executor. Here, then, is a man of undoubted mental capacity, having a full knowledge of every dollar's worth of property he has in the world, and of all obligations resting upon him, in the presence of his scrivener and the witnesses selected by himself, and in the presence of no one else, disposing of his worldly estate according to the dictates of his own untrammeled will; and yet a jury has been allowed to treat this last solemn expression of the testator, so formally, deliberately, and carefully made, as though it were the work of a driveling imbecile, and thus, in effect, to take his property from his own donees and pass it over to those for whom he certainly never intended it. The primæ facies are all against a conclusion of this kind; hence it becomes our business to inquire what were the circumstances and processes of reasoning which led to such a result.

The contestants urge that he left his property to strangers to the exclusion of those of his own blood. This, however,

of itself amounts to nothing, for no one will contend that a man may not lawfully disinherit even his own children, much more those not so nearly related to him. Had Weiss been of weak mind or memory, the circumstance here mentioned might be worthy of consideration; but as he was neither, it cannot be legitimately considered. Moreover, he had, and repeatedly gave, his reasons for the exclusion of his relatives. Before the will was drawn one of the first questions asked of him by Alderman Hartman was, whether he had "any relations—brothers or sisters;" his reply was that he had sisters, "but they didn't care for him and he didn't care for them, and he wouldn't give them anything at all." It is thus obvious that whatever else he may have intended, he did not intend that his relations should have any of his property. If, then, these were not to enjoy his accumulations, clearly natural affection for his own blood is out of the question, and the proponent's case is relieved of this argument against it. The next of kin being thus passed over, and, under the circumstances, not to be considered, what was there in the nature of things to prevent his preference for Trost and wife? They were persons with whom he preferred to live; Trost was a fellow soldier for whom he professed great affection, and together they had nursed him as well as they knew how, and that, for him at least, Weiss should have some kindly regard was certainly not unnatural.

But it is alleged that over the testator the proponents exercised an undue influence, and that through that influence they procured the legacies in controversy. Undoubtedly undue influence may so operate as to destroy a will, for in such case the testator is not a free agent; he becomes the mere implement of another's craft, and his testament that of the superior will. But influence short of this is not what is technically known as "undue influence." This term has been carefully defined and its effect considered in many of our own cases; among others, Thompson v. Kyner, 65 Pa. 368; Eckert v. Flowry, 43 Pa. 46; McMahon v. Ryon, 20 Pa. 329, and Tawney v. Long, 76 Pa. 106. According to these cases, undue influence may be exercised either through threats or fraud; but however used it must, in order to avoid a will, destroy the free agency of the testator at the time and in the very act

of making the testament. Solicitations, however importunate, cannot of themselves constitute undue influence; for though these may have a constraining effect, they do not destroy the testator's power to freely dispose of his estate.

Applying the rule here stated to the case in hand, and it seems almost ludicrous to allege that Trost and his wife exercised over Weiss such an influence as to absolutely destroy his free agency. Every fact and circumstance of the case forbid a conclusion such as this. At the time of the making of the will he was certainly under no constraint, unless it was through the influence of some previous threat or fear made or produced by the proponents : but of this there is not one word of evidence. Weiss .was a soldier ; his intellectual powers were vigorous ; his neighbors and the members of the societies to which he belonged had free access to him ; he had an abundance of money and used it as he pleased ; Trost and his wife were his tenants and servants, whom he could have dismissed or abandoned when he pleased; and to say that these persons, who were intellectually and pecuniarily his inferiors and dependents, should be able so to constrain his will as to deprive him of his free agency, seems scarcely less than absurd.

Much stress has been laid on the declarations of Weiss as supporting the contention of the contestants, but an examination proves that they really amount to very little. Of these declarations I select an example from the testimony of Emil Henck, who, from the manner in which he testifies, may be trusted to make out the best case possible for the contestants. He says : " By his own free will he stated to me to take him back to the home again ; that he couldn't stand such a hechs [hag] and snake in the house ; that she bothered him day and night to make a will and sign everything over to her. This has occurred frequently, and a very particular time was on Friday before the, will was made. I was standing there and he called me ; he was at the window and wanted me. I went across the street and he says through the window—I was outside— ' Henck, for God's sake, take me to the home. I can't stand it here any longer, because I get bothered till I do sign it.' This was on Friday before the will was made ; the dates I don't know."

Obviously this was nothing but a bit of petulant scolding which amounted to very little. Admitting, however, that what he said was strictly true, it reveals neither force, fraud, nor undue constraint, but simply a persistent and irritating solicitation which he could at any time have avoided by discharging these people. In the case of Tawney v. Long the testator had complained of similar solicitations; nevertheless, we held that they did not avail to destroy his will, and that, " even importunate persuasion, from which a delicate mind would shrink, will not invalidate a devise." On the other hand, some two days after the execution of the will, we have the following as extracted from the evidence of Peter Segur:

" Well, after I sat down and he called Mrs. Trost; Maggie, says he, go and get me my pocket-book under my pillow there, and get us some paper, and she went and bought five cents' worth of paper; and so, when she was gone, he says, Why, Segur, they want to make me crazy. Says I, Who is going to make you crazy? He says, This Henck; there were two doctors here to examine me. Says I, I don't see nothing crazy about you. Says he, Yes my lodge brothers want to make me crazy. Oh, says I, they want just the money they will get off you; you ought to give them that money back what they gave you to help you along. He says, I paid in eight years and I don't belong to the lodge two years no more; I have nothing to do with it. And then he turned round and says, Segur what would you do? I have sisters— one sister here and one in the state of New York, I don't know where—and neither one come here and ask me, Gottlieb, you want a drink of water, or how you getting along, or do you get anything to eat? or, in fact, do anything for you, and these people do all for me what they can, and see I get to eat and drink. What would you do. if you were going to make your will out? Says I, Leave it to them. And he says, I have done so; they shall have all what I own after I am dead."

Here is another piece of scolding, but this time it falls upon Henck, the witness first above named, and upon the brethren of his lodge; their solicitations are now setting him crazy. We have now a commendation of the Trosts, and the statement that he had left to them his entire property in preference to

his next of kin; and clearly, if he had ever felt any ill will towards Mrs. Trost, it has now evaporated, and Henck is the one who has in turn to bear the smiting of the rod of his mouth. But beyond these declarations, which, as we have seen, balance each other, and which are, in any event, of little consequence, there is no evidence that these proponents did not do their duty to the testator fairly and well, or that they adopted any improper or unlawful means to induce the devise in their favor.

The judgment is reversed.

Argued October 28, 1887—Decided January 3, 1888.