# Englert v. Englert.

*Will—Issue devisavit vel non—Evidence—Opinions of witnesses.*

Allegations of want of testamentary capacity are not sustained by the testimony of witnesses called to express opinions that the testatrix was not fit to do business or make a will, where the opinions are not based upon facts which sufficiently indicate the disappearance of the intelligence which the testatrix needed to dispose of her property.

On the trial of an issue devisavit vel non, two witnesses were physicians who had been sent to examine testatrix by those interested in procuring opinions that her mind was impaired. The first having had a single interview with her, lasting but fifteen or twenty minutes, testified that he could not remember whether he had asked her any questions which she refused to answer, but concluded from her looks and age and because she and her house were unclean, that she was childish and unfit to make a will. The other, as a result of an interview of about the same duration, though unable to recall any question put to her, or whether she had made any reply, thought that she was childish because he had seen her and tried without success, to lead her into conversation. *Held*, that the evidence was insufficient to sustain a verdict and judgment against the will.

*Wills—Issue devisavit vel non—Insanity—Delusions.*

Delusions which are not in any way relevant to the making of a will, and from which the will does not result, cannot be regarded as sufficient to set it aside.

*Wills—Issue devisavit vel non—Undue influence—Time.*

Undue influence, however used, must, in order to avoid a will, destroy the free agency of the testator at the time and in the very act of making the testament. Solicitations however importunate cannot of themselves constitute undue influence; for though these may have a constraining effect, they do not destroy the testator's power freely to dispose of his estate.

Submitted Oct. 23, 1900. Appeal, No. 71, Oct. T., 1900, by plaintiff, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1899, No. 104, on verdict for defendants in case of Charles Englert v. John Englert et al. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Issue devisavit vel non. Before Evans, J.

At the trial it appeared that testatrix, Christina Englert, was at the time of her death about seventy-eight years old. Ten days before her death she executed her will by which she gave practically her whole estate to Charles Englert. She was living at this time with Charles who was her son. The issues tried were lack of testamentary capacity and undue influence. The evidence is set forth in the opinion of the Supreme Court. The contestants were children and grandchildren of the testatrix.

Plaintiff's points were as follows:

1. That upon the question of undue influence the verdict should be for the plaintiff. *Answer:* Refused. [4]

4. That neither age, nor sickness, or extreme weakness, or debility, or lack of memory for names or recent events, or even a previously existing disorder of the mental faculties, although existing in a great degree, will render one incompetent to make a will, if otherwise at the time of making the will sufficient intelligence remains; and if the jury believe that at the time Christina Englert made her will she had an intelligent knowledge of what property she owned, an intelligent understanding of the persons whom she desired to benefit by her will, was able to give reasons as to her choice of those whom she desired to benefit, and was able to understand the act she was engaged in in making her will, even though her mind and intellect was not so strong and clear as it had heretofore been, and even though she was not able to grasp all the details of the business

at once, and even though she was aged, weak, infirm and of failing memory and mental powers, then she was competent to make a will and upon that question the will must stand and the verdict be for the plaintiff. *Answer :* And if you find that condition to exist and that she was competent to make a will, your verdict must be for the plaintiff. That point is affirmed. [5]

Defendants presented these points :

If the jury believe the testatrix, Christina Englert, was, at the time of making of the alleged will, of unsound mind, the verdict should be for the defendant. In determining whether or not a testatrix has been of sound mind and disposing memory, the question is, was her mind and memory sufficiently sound to enable her to know and to understand the business in which she was engaged at the time when she executed the will. A woman of sound and disposing memory is one who has a full and intelligent knowledge of the act she is engaged in, a full knowledge and understanding of the disposition she desires to make of it and of the persons and objects she desires shall be the recipients of her bounty. *Answer :* Affirmed. [6]

2. If the jury believe from the evidence that the testatrix, Christina Englert, at the time of the execution of the will in controversy was in a weak condition physically and mentally, and that Charles Englert, the plaintiff, taking advantage of her said condition by the exercise of undue and improper means procured the making of said will, so largely in his own interest and to the prejudice of the other heirs of the testatrix, this would justify a finding by the jury that the execution of the will was the result of undue influence practiced by him, and the verdict should be for the defendants. *Answer :* That point is affirmed. That is, if the evidence satisfies you that Charles Englert did exercise undue means, as explained to you in my general charge. [7]

3. The fact that under the terms of the will in controversy all of the children and natural heirs of the testatrix are practically disinherited in favor of the plaintiff, may be taken into consideration by the jury together with the other evidence in the case as showing the exercise of undue influence on the part of the plaintiff. *Answer :* That point is affirmed with this qualification: The fact that this will disinherits all the

children but one is not of itself evidence of undue influence exercised by Charles Englert. You can take into consideration together with that, the fact set forth in the above point. [8]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* among others were (4–8) above instructions, quoting them.

*I. N. Patterson*, with him *Alexander A. Patterson*, for appellant, cited in their printed brief: Caldwell v. Anderson, 104 Pa. 199; Blume v. Hartman, 115 Pa. 32; Scattergood v. Kirk, 195 Pa. 195; Trost v. Dingler, 118 Pa. 259; Tawney v. Long, 76 Pa. 115.

*W. A. Hudson*, with him *John A. Emery*, *T. H. Davis* and *J. D. Buckley*, for appellees, cited in their printed brief: Daniel v. Daniel, 39 Pa. 207; Reichenbach v. Ruddach, 127 Pa. 564; Perret v. Perret, 184 Pa. 131; Miller's App., 179 Pa. 645; Wilson v. Mitchell, 101 Pa. 495; Herster v. Herster, 116 Pa. 627; Boyd v. Boyd, 66 Pa. 283; Redfield on Wills, * 515; Blume v. Hartman, 115 Pa. 39; Boyd v. Boyd, 66 Pa. 293; Yardley v. Cuthbertson, 108 Pa. 395; Cuthbertson's App., 97 Pa. 163.

OPINION BY MR. JUSTICE BROWN, January 7, 1901:

In this issue devisavit vel non the contestants allege want of testamentary capacity and the exercise of undue influence over the testatrix at the time her will was executed. We have, with proper care, reviewed all the testimony and are unable to discover what could have justified the jury in finding that the testatrix did not at the time she executed her will, possess that intelligent perception and understanding of the disposition she was about to make of her property, which are essential to a valid testamentary distribution of one's estate. In support of her alleged incapacity, it is true, several witnesses were called who expressed opinions that she was not fit to do business or to make a will, but that of no one of them was based upon facts which sufficiently indicated the disappearance of the intelligence which she needed when she came to dispose of her property;

and this applies to the two physicians sent to examine her by those interested in procuring opinions that her mind was impaired. The first of these doctors, having had a single interview with her, lasting but fifteen or twenty minutes, testified that he could not remember whether he had asked her any questions which she refused to answer, but concluded from her looks and age, and because she and her house were unclean, that she was childish and unfit to make a will. The other, as the result of an interview of about the same duration, though unable to recall any question put to her, or whether she had made any reply, thought that she was childish because he had seen her, and tried without success, to lead her into conversation. The old lady might very properly have regarded these two witnesses as intruders in her home and declined to have any communication with them. We need not, however, dwell longer on the absence of proof of her mental incapacity. The learned trial judge in his charge to the jury, said: "The only evidence in this case which of itself would point strongly to the fact that Mrs. Englert was not of sound mind is the evidence of hallucinations;" but he ought to have added that as these delusions were not relevant to the will, and there was nothing to show that it resulted from them, they ought not to be regarded as sufficient to set it aside. Upon the whole evidence the jury should not have been allowed to guess that the testatrix was of unsound mind because in their judgment there should have been a different distribution of her estate. In cases like this the only sure protection to the estates of the dead, passing to beneficiaries under their wills, can be found in the court; and most appropriate now are the words of our Brother MITCHELL, in Shreiner v. Shreiner, 178 Pa. 57, in which a will was declared valid that had been torn to pieces by the whims of a jury: "Upon the whole case we have, first, delusions showing impairment of mind in some directions, but not in any way relevant to the making of a will; failure of memory as to persons, places and recent small occurrences, but not shown to extend to a single serious matter; and the opinions of a number of witnesses, most of them unlearned on the subject, that the testatrix was unfit to make a will." The burden having been upon the appellees to submit proper proofs of their contention, and having failed so to do, it is unnecessary for us to refer to what plaintiff proved—to the testimony of the subscribing wit-

nesses to the will, of the inmates of the house in which testatrix lived, of her own physician, of two others who made a careful examination of her condition, of the priest who visited her in her last sickness and of the neighbors who had seen her for months—all speaking for her intelligence in executing the will of April 2, 1898, in which the special object of her bounty was the same son who had been her chief concern in her former will of June 15, 1891.

The first point presented by the appellant was "that upon the question of undue influence, the verdict should be for the plaintiff." This was refused. It should have been affirmed. " Undoubtedly undue influence may so operate as to destroy a will, for in such a case the testator is not a free agent; he becomes the mere implement of another's craft, and his testament that of the superior will. But influence short of this is not what is technically known as 'undue influence.' This term has been carefully defined and its effect considered in many of our own cases, among others, Thompson v. Kyner, 65 Pa. 368, Eckert v. Flowry, 43 Pa. 46, McMahon v. Ryan, 20 Pa. 329, and Tawney v. Long, 76 Pa. 106. According to these cases, undue influence may be exercised either through threats or fraud; but however used it must, in order to avoid a will, destroy the free agency of the testator at the time and in the very act of making the testament. Solicitations, however importunate cannot of themselves constitute undue influence; for though these may have a constraining effect, they do not destroy the testator's power to freely dispose of his estate : " Trost v. Dingler, 118 Pa. 259. The testimony will be searched in vain to find undue influence tested by the foregoing, if it can be found at all. The jury should have been instructed to find for the will. The judgment is reversed, the issue directed to be set aside and the costs are to be paid by the appellees.