# Masterson, Appellant, *v.* Berndt.

*Will—Issue devisavit vel non—Undue influence—Evidence.*

A jury cannot set aside a will on the ground that some silent, mysterious influence may have operated on the mind of the testator. Even strong persuasion on the part of the beneficiary is not enough to establish undue influence.

On the trial of an issue devisavit vel non the evidence showed that the

testatrix at the time she made her will was aged and physically weak, and that she was staying at the time in the house of a friend who was the principal beneficiary under the will. The will was drawn by a reputable attorney who received his instructions from testatrix at an interview at which he was alone with her. The attorney and a priest witnessed the will. The attorney, priest, and the attending physician all testified that testatrix was of sound mind, and perfectly able to transact business at the time she made her will. Other witnesses testified to the rational condition of the testatrix and there was no evidence to the contrary. There was no direct evidence of the exercise of any influence upon the testatrix by or on behalf of the principal beneficiary. The testatrix had made prior wills in which she had remembered her grandchildren, and it was shown that she had a friendly feeling to her grandchildren. In the will there was no mention of the grandchildren. *Held,* that it was error to submit the case to the jury, and that a verdict and judgment for the contestants should be set aside.

Argued May 4, 1903. Appeal, No. 54, June T., 1903, by plaintiff, from judgment of C. P. Warren Co., Dec. T., 1902, No. 17, on verdict for defendant in case of Mary E. Masterson v. Sarah Berndt et al. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Issue devisavit vel non. Before LINDSEY, P. J.
The facts are stated in the opinion of the Supreme Court.
Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in submitting the case to the jury.

*D. I. Ball* and *W. W. Wilbur*, for appellant.—Under the evidence in this case the learned court below erred in submitting the case to the jury on the question of testamentary capacity. Insufficient evidence is regarded as no evidence at all: Cauffman v. Long, 82 Pa. 72; Shaver v. McCarthy, 110 Pa. 339; Wilson v. Mitchell, 101 Pa. 495; Englert v. Englert, 198 Pa. 326.

Mrs. Masterson occupied no confidential relationship to Mrs. Hennessy. She had therefore no burden to disprove undue influence: Miles v. Treanor, 194 Pa. 430; Doran v. McConlogue, 150 Pa. 98; Audenreid's Appeal, 89 Pa. 114; Douglass's Estate, 162 Pa. 567; Miller v. Oestrich, 157 Pa. 264.

*W. E. Rice*, with him *W. D. Hinckley*, for appellees, cited: Herster v. Herster, 116 Pa. 612.

OPINION BY MR. JUSTICE POTTER, January 4, 1904:

Under the issue in this case, the trial court left two questions to the jury:

1. Whether at the time the will was written the testatrix was of sound and disposing mind and memory? and, 2, whether its execution was procured by duress, fraud, imposition and undue influence? The jury found a general verdict for the defendants.

The undisputed evidence showed that up to November 26, 1901, Mrs. Johanna Hennessy, an aged widow, residing at Irvinetown, Warren county, was possessed of testamentary capacity. She had already made two wills, drawn by a neighbor and former justice of the peace, in which she left legacies to an adopted daughter, Mrs. Toomey, and the residue of her estate to a granddaughter, Mrs. Berndt, who lived in Ohio. One of these wills was still in existence. On the date named (November 26, Tuesday) she went by train to Warren, six miles away, to attend to some business, and while there was overcome by cold and exposure and was taken to the house of John K. Masterson and wife, who had long been her intimate friends. She remained at Mr. Masterson's house eight days, until Wednesday, December 4, when she died. She recovered from the effects of the cold by which she was prostrated when she first came to the Masterson house, but subsequently a gangrenous condition of her hand and arm, incident to old age, developed, and caused her death.

On Thursday, November 28, 1901 (Thanksgiving Day), the alleged will was executed. Mrs. Hennessy could not write, and signed it with her mark in the presence of the subscribing witnesses. The will was drawn by William Schnur, a reputable attorney of Warren, who also witnessed it. The other witness was the Rev. Joseph W. Sieverding, a Roman Catholic priest, who visited the testatrix daily during her illness and administered to her the last sacraments of the church. By this will the house and lot at Irvinetown, where the testatrix resided, were devised to an adopted daughter, Mrs. Toomey, who was also a beneficiary under the prior wills; a bequest of $50.00 for masses was made, and the residue of her estate was given to Mrs. Mary E. Masterson, the friend at whose house she then was. There was no mention of any of her grand-

children.  Mrs. Masterson was named as executrix of the will.

The testimony of the subscribing witnesses was full and clear to the effect that the testatrix was of sound mind, and perfectly able to transact business at the time she made the will.  The lawyer who drew the instrument testified that Mrs. Hennessy talked to him at considerable length, giving him an account of her illness, and of her desire to make a will.  She described to him her property, both real and personal, and told him about her grandchildren.  During the greater part of his conversation with Mrs. Hennessy no one else was present.  In answer to questions, he stated that from the conversation which he had with her, and his observation of her, he thought her as capable of transacting business as anybody he knew of, and that she was possessed of a sound and disposing mind and memory sufficient to make a will.

The attending physician, Dr. Haines, testified in substance that he was called in to see Mrs. Hennessy on Wednesday, the day before Thanksgiving.  He saw her also on Friday and subsequently.  Both on Wednesday and Friday, the condition of her mind was perfectly rational, so far as he could see.  He says : " In my opinion the state of her mind on Friday, as to her ability to do business, was as good as any person's would be at her age, as far as I could make out.  I considered her perfectly rational and as competent to do business as any woman of her age."

Several other witnesses also testified to her rational condition and conversation.

The defendants showed the execution of the prior wills.  They also showed the friendly relations between testatrix and her grandchildren, and particularly her fondness for Sarah Berndt.  Several witnesses testified that Mrs. Hennessy had said that Sarah would get all she had, because she had been good to her mother, Mrs. McMahon, who was Mrs. Hennessy's only child, and who had suffered a long illness before her death.

But there was no testimony to show either want of testamentary capacity at the time the will was made, or the exercise of any influence upon the testatrix by or on behalf of the residuary legatee, Mrs. Masterson.

The evidence upon the part of the defendants did not upon

either of the questions involved make a case sufficient to submit to the jury. The learned judge of the court below, in his charge, said to the jury that there was no direct and positive testimony of the exercise of undue influence by the beneficiary, yet undue influence might be of a silent nature and character. Just what was meant by this is not clear. He had just quoted from the opinion in Herster v. Herster, 116 Pa. 612, "That an undue influence may be exercised secretly as well as openly." In that case it was then held that there was sufficient evidence of undue influence to be submitted to the jury, but when the case came before this court a second time in Herster v. Herster, 122 Pa. 239, the former decision was practically overruled, the court saying, in an elaborate opinion by Mr. Justice CLARK (p. 258) : " In the former opinion of this court, it was held that the evidence was sufficient to justify a submission to the jury. The testimony was then and is now very voluminous, the evidence embracing over one thousand pages of printed matter, and, perhaps, we did not give it that exhaustive examination and patient study which we have since been able to do. The whole case is now before us, and we are constrained to say that the testimony bearing upon the precise question at issue is certainly of the most meagre, unsatisfactory and inconclusive character. . . . There is not the slightest proof that he (testator's son) took any part in the actual preparation of the will or of any of the codicils ; indeed, that he was even present when they were made and written, or when they were signed. Under these circumstances, the burden of proving undue influence is clearly upon those who allege it." The judgment upon a verdict against the will was then reversed.

In a recent case, in which an order refusing to grant an issue was affirmed on the opinion of HANNA, P. J., it was said, after considering the testimony of witnesses called on behalf of the contestants : " Opposed to this is the testimony of those who were actually present at the drafting of the will, its engrossing and submission to testator, heard his assent to its provisions, saw him affix his signature thereto, listened to his remarks and conversation and had cognizance of his mental and physical condition, both previous to, at the time of the execution of the will, and subsequent thereto. Such testimony is entitled to far greater belief and reliance :" Tasker's Estate, 205 Pa. 455.

In the present case there was no ground upon which to rest a finding of testamentary incapacity, unless the jury were allowed to infer it from the age and physical condition of the testatrix, and the inconsistency of the terms of the will with her previously expressed intentions. But to this was opposed, as we have already shown, the direct and positive evidence of testamentary capacity in the testimony of both the physician and the priest who attended her in her last illness, and the lawyer who drew the will, as well as that of several other uncontradicted witnesses. Nor was there any sufficient evidence of undue influence. We know of no authority which would justify a jury in setting aside a will on the ground that some silent, mysterious influence may have operated on the mind of the testator. Even strong persuasion on the part of the beneficiary is under the cases held not enough to establish undue influence. " Solicitations, however importunate, cannot of themselves constitute undue influence, for though these may have a constraining effect, they do not destroy the testator's power to freely dispose of his estate :" Trost v. Dingler, 118 Pa. 259; Englert v. Englert, 198 Pa. 326. Much less, then, would " silent influence," even if capable of proof, have that effect.

The jury in this case should have been instructed to find for the will. It is not necessary to consider the assignments of error in detail. The judgment is reversed, the issue is directed to be set aside, and the costs are to be paid by the appellees.