## Landis *versus* Landis.

1. On the trial of an issue *devisavit vel non*, legatees under the alleged will are competent witnesses against its validity; so, also, is one named as executor; so, too, are heirs-at-law, unless it appear that it is their interest to defeat it.

[Landis *v*. Landis.]

2. Where the sanity of the alleged testatrix is in question, and the positive evidence of her insanity has been given, and it has been shown that she had had a paralytic attack shortly before the execution of the alleged will, an offer to prove that in nine cases out of ten paralysis does not produce any effect upon the mind, is incompetent. A dispute as to the cause cannot affect the existence of a fact.

3. Declarations of the alleged testatrix, more than two years before its execution, as to her wishes in regard to the disposition of her property, cannot be given in evidence to support the alleged will.

4. The law presumes every one of full age competent to make a will, of sufficient mental capacity to do the act; and allegations to the contrary must be proved.

5. When once mental incapacity is established, and a general derangement or imbecility of mind clearly proved, at any time prior to the execution of the alleged will, the burden of proof is changed; and those seeking to establish the validity of the paper must show that at the time of its execution the alleged testator had sufficient mental capacity to execute a will—that he had mind, memory, understanding, and judgment, so that he could, in an intelligible way, dispose of his property.

6. A devisee, who takes possession of a devise under the will, is estopped from denying its validity; but it is for the jury to say whether his acts show an intention of taking such possession.

ERROR to the Court of Common Pleas of *Philadelphia.*

This was a feigned issue, *devisavit vel non*, as to the will of Margaret Landis; the allegations of the plaintiff being:

1. That the testatrix was not of sound mind, memory, and understanding, nor of mental capacity to make said instrument of writing.

2. That she did not execute said instrument of writing with a full knowledge of its contents.

3. And that the same was obtained by force and imposition, and undue and improper influence.

It appears in evidence that Margaret Landis, on the 9th September, 1848, executed a paper purporting to be her will, and died the 2d October, 1848.

The plaintiff, who contested the will, offered as witnesses Angelina Hollis and Rosanna G. Cansler, who were objected to, on the ground of interest, being legatees under the will; but they were admitted by the court, on the ground that they were not parties on the record, when they might have been, and also because it was clear from the will it was for their interest to sustain it, and they were, therefore, competent witnesses against its validity. Lorenzo F. Landis was also offered, and objected to on the same ground, and also as being executor; but the objection was overruled by the court.

The defendant offered D. Weatherly, to prove what testatrix had said about disposing of her property so as to keep it from her sons-in-law. The offer was objected to, on the ground that the conversation proposed to be proved took place more than two years before the execution of the alleged will. The objection was sustained, and the offer overruled. Defendant also offered to prove, by Dr. Campbell, that paralysis, in nine cases out of

[Landis *v.* Landis.]

ten, does not affect the mind; this offer was also objected to, and overruled.

PARSONS, J., charged the jury as follows :—The question for the determination of the jury is, whether a paper writing, bearing date the 9th September, 1848, is the last will and testament of Margaret Landis, deceased.

There are a few legal propositions which the court will state, that are proper for the jury carefully to consider, in their application of the facts to them :

1. The law presumes every one of full age competent to make a will, of sufficient mental capacity to do the act; therefore, he who alleges to the contrary must prove it to the satisfaction of the jury.

2. When once such mental incapacity is established, and the minds of the jury are convinced of that fact, and a general derangement or imbecility of mind clearly proved, at any time prior to the time when the paper purporting to be a will was executed, then the burden of proof is changed, and those who attempt to establish the validity of the paper, must prove that the alleged testator, at the time of the execution of the instrument, had sufficient mental capacity to execute a will—that she was of sound disposing mind, memory, and understanding. It will not be sufficient to give validity to the alleged will, to show that the decedent could return appropriate answers to plain or common questions. But it must be proved that she had mind, memory, understanding and judgment, so that she could, in an intelligible way, dispose of her property. 10 S. & R. 91. The jury will, then, consider each of these propositions in their order.

Now, if the jury should believe, from the testimony of the attending physician, that in the latter part of June, 1848, the deceased had a paralytic attack, and in the latter part of July had a second attack of paralysis, which prostrated her body, and one part of it was made inactive, and that her mind was also prostrated by this attack of paralysis to such an extent as to destroy her understanding, memory, and judgment, to such an extent as to render her incapable of disposing of her property, then the burden of proof would be changed, and those who wish to sustain the will must prove that there was such a restoration of mental capacity, at the time of the execution of the paper, as would enable her to exercise mind, judgment, memory, and understanding.

In considering the point first stated, it is proper for the jury to take, in connection with the testimony of Dr. Jones, that of the other witnesses adduced by the plaintiff. Now, does the testimony of all these witnesses satisfy you that the mind of Mrs. Margaret Landis was injured? Was it so far rendered inactive, or had it become so far prostrated and deranged by disease, as to

[Landis *v.* Landis.]

destroy her mental faculties, and render her incapable of an intelligent disposition of her property?

I will here call your attention to an outline of the testimony of each of these witnesses. (The learned judge here reviewed the evidence.)

Has this testimony satisfied your minds that she was ever prostrated in mind as well as body, and was incapable of making a will? It is also proper for you to consider, in connection with this, the rebutting evidence adduced by the defendant. You will take this evidence altogether in deciding this first proposition, to wit: Was Mrs. Landis ever incapable of making a will? Was that legal presumption which I first stated ever destroyed? If you are not satisfied with this, then you need not inquire any further. But if you shall be satisfied from all this evidence that she was deprived of her mental faculties, so as to render her incapable of making a will, then it will be your duty to consider the two remaining propositions in the case: 1. Was there a lucid interval, and her reason restored? 2. Was her mind invigorated, so that she was, on the 9th September, capable of making a will? 10 S. & R. 91.

This depends mainly upon the testimony of the four witnesses who were present at its execution, two of whom subscribed as witnesses to the will.

It is then for you to decide this last proposition, and say whether there was, on the 9th September, a lucid interval, which so far restored her mind so that she had disposing memory, so that she was able to make a disposition of her property with understanding and reason. If she was not, then the paper is void, and is not her will under the legal rules above stated.

It is lastly alleged that this paper was imposed upon the deceased by Peter; that while he gave written instructions to the scrivener, Mr. Shipley, as a general outline of the will from his mother, he afterwards gave other and different instructions as to some portions of it. It is for you to determine this fact. If he did impose upon his mother, and gave directions for an alteration without the authority of his mother, and she was thus imposed upon when the alleged will was presented to her, then this paper would not be her will, but any such act of imposition would render it void.

But it is alleged, by the defendant's counsel, that Robert Landis, the plaintiff, cannot contest this will, because he has ratified it by taking possession of a devise under it,—the burial lot in the grave-yard at Roxborough.

The law is this, if a man does an act ratifying a deed or will by taking property under it, he should not afterwards dispute the validity of it. But it is for the jury to say, from the evidence in relation to this point, whether the evidence in the cause shows

[Landis *v.* Landis.]

that Robert Landis did do any such act. Has he the exclusive possession of the burial lot? Is that clearly proved? It is proved the title deeds have never been given to him, for one of the executors has them. If the jury should believe he is constructing a vault, or has constructed one (of which there is but little evidence,) and did it out of respect to the memory of his parents, and not with the view of taking the possession under the will; then he is not stopped from denying the validity of this paper, but can controvert it, unless he has claimed under it.

As an heir, he would have the right to take possession of any of the real estate as a tenant in common; and if he did so, denying the validity of the will, then such an act would not be in law an estoppel.

It is upon these principles the court submits this case to the jury; the credibility of the witnesses is for you. It would be proper for you to consider the peculiar opportunities that each witness has had for obtaining an accurate knowledge of the facts to which they depose. You may reflect, who could best know the state of mind of the deceased, when this paper was executed. Would it be those who only saw the deceased by casual visits of but a short time, or the physician, the nurse, the children of the deceased, who knew her in health, in the full possession of her intellect, and when prostrated by disease. It is for the jury to determine these facts by the evidence.

It has been argued that if this will should be set aside, the orphans of a daughter of the deceased would not be protected. We say to you, that the father of those children could not receive one dollar of the property that would come to them, if the grandmother should become intestate. But they get ample protection under the law, by the appointment of a proper guardian by the Orphans' Court, who would hold the property for them.

The admission of Mrs. Cansler, Mrs. Hollis, and Lorenzo Landis; the rejection of the testimony of D. Weatherly, and Dr. Campbell, and the charge of the court, were assigned as errors.

*Brewster*, for plaintiff in error.

*Perkins*, for defendant in error.

The opinion of the court was delivered by

LOWRIE, J.—Angelina Hollis, Rosanna Cansler, and Lorenzo Landis, were objected to as witnesses because they are legatees; but this fact rather adds to their credibility when they testify against the will, and certainly does not affect their competency when he, who might on this account object to them, calls them. They are also heirs-at-law, but it does not appear that it is their interest to defeat the will.

[Hanna v. Phillips.]

Lorenzo Landis is also executor, and this fact might incline him to wish to support the will, but certainly it gives him no interest to defeat it; and his position imposes upon him no duty of silence when the heirs demand his testimony.

When David Weatherly testified that he had never heard the testatrix speak about making a will, in disposing of her property after her death, it was vain to question him further as to her declaration. The result must have been a negative answer, or a detail of intended arrangement, not testamentary, expressed by the testatrix, two and a half years before her death, which could have cast no light on the question of her sanity at the time of making the will. That question did not at all depend upon the mode of disposition; but upon the direct evidence of the acts in the last two months of her life.

Dr. Campbell was called to prove that in nine cases out of ten, paralysis does not produce any effect upon the mind. The reason for rejecting this offer does not appear. Perhaps it was because it was not supposed to be serious; for it is incredible that any scientific man would thus testify. However this may be, the merits of the cause did not suffer by its rejection. The existence of a phenomenon is not at all affected by any dispute as to its cause. If any witness had assigned paralysis as the cause, you might show his ignorance by showing that this could not be; but the positive evidence of the phenomena of insanity would remain unaffected by this dispute about causes. The offer admits that paralysis does in some cases affect the mind, and proof that, in a majority of cases, it does not do so, in no degree rebuts the evidence of the fact in this case. Not one person in a hundred becomes insane by ordinary diseases, yet proof of this fact would cast no light in the hundredth case, or rebut the evidence of its own facts. If it were proved that in no case does paralysis cause insanity, this would not rebut the evidence that in this case it accompanied insanity.

We discover no error in the instruction given by the court to the jury. There is a mistake of fact in repeating some of the evidence; but this was not binding on the jury, nor intended to be, and we cannot believe that they were misled by it.

Judgment affirmed.