## Grubbs et al. *versus* McDonald et al.

1. Testamentary capacity is the normal condition of one of full age, and the affirmative is with him who undertakes to call it in question, and this affirmative must be established not in a doubtful but in a positive manner.

2. Where immaterial additions are made to a will by a stranger, such as the affixing a seal thereto, or adding the words "his mark," these alterations do not affect the validity of the will.

3. *It seems*, it is always better for the court to put a case to the jury on the evidence generally, rather than upon the testimony of one or more witnesses, selected from the whole number sworn during the trial. Such selection tends to make the case turn upon the credibility of the witnesses named, and upon a partial view of the evidence, both of which tend to weaken or exclude other testimony and circumstances of the case which should be considered.

October 8th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas, No. 1, of *Allegheny county :* Of October and November Term 1878, No. 234.

This was a precept from the register of wills of Allegheny county, directing an issue to try the validity of a writing purporting to be the will of John Grubbs, deceased. In said issue John F. McDonald and others, were plaintiffs, and James Grubbs and others, defendants. John Grubbs died May 26th 1875, in the sixty-ninth year of his age. He left a farm of about ninety acres, and a widow and five sons, Andrew, Lewis, James, A. Reed and Frank A. Grubbs, and one daughter, Martha, intermarried with Robert Huston. On the day before his death he made a will which contained the following provisions :

" I give, devise and bequeath to my beloved wife, Isabella Grubbs, who shall have her home with my two sons, Adam Reed and Francis A., and that they shall support her as long as she lives.

" I give, devise and bequeath to my two sons, Adam Reed and Francis A., the farm I now occupy, to be divided equally between them (Adam Reed and Francis A.); all the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath to be equally divided between my three sons, Andrew, Lewis, James and my daughter, Martha Ann.

" And lastly, I do nominate and appoint John F. McDonald to be the executor of this my last will and testament.

[Grubbs v. McDonald.]

"In testimony whereof, I, the said John Grubbs, to this my last will and testament, have subscribed my name and affixed my seal this 25th day of May 1875.

Signed in presence of us :

| | | |
|---|---|---|
| JOHN F. McDONALD, | [SEAL.] | his |
| JOHN WALLACE, | [SEAL.] | JOHN × GRUBBS, [SEAL]." |
| SAMUEL WALLACE. | [SEAL.] | mark. |

At the time of his death Adam Reed and Francis A. Grubbs were living with their father, and were farming the place on which the testator had resided. His other children had left before the purchase of the farm by the testator. Until the date of his last illness there was no allegation that testator was not competent to make a will. Previous to his death he suffered with a painful illness, and the efforts of his physician were chiefly directed to alleviating his pain, and to attain that result administered morphia to him. On the day of the execution of his will it was alleged that by reason of his illness and the influence of morphia, testator's mind was so much impaired that he was not competent to make a will. Lewis Grubbs testified that his father did not recognise him. The testator's widow testified that he was in an enfeebled condition, and did not recognise his son Lewis. On the contrary the wife and son of James Grubbs testified that he was conscious. The attending physician testified he was conscious, rational and understood what he was talking about. The only persons who saw the testator between two and five o'clock on the day the will was executed, were John F. McDonald and John and Samuel Wallace, who were neighbors, and who were sent for to write and witness the will.

It appeared from the testimony of McDonald and the two Wallaces that McDonald came to the house about two o'clock. James Grubbs ushered him into the room, and asked his father if he knew the man, and the reply was given, "Yes, Mr. McDonald." He found Mr. Grubbs lying there greatly reduced, but not apparently suffering great pain. Testator spoke freely to him. Being left alone, McDonald asked him what he had been sent for. He replied that he wanted to get his business fixed up ; that these two boys here (meaning Reed and Frank) had always stayed with him, and that he wanted to fix them right before he was called away. When asked what he meant by fixing them right, he said he wanted to divide *that* between them. Mr. McDonald then asked him '(and Samuel Wallace was present and also so testified) whether it was his will that the place on which he lived should be equally divided between Reed and Frank, and he said it was. He told McDonald that his other children had been provided for, and that as to his wife, she was to have a home on the place and be supported by the two boys, Reed and Frank. McDonald started to write this down, but being

a slow penman, and the old man's disease requiring attention, he was delayed until Samuel Wallace came into the room, when he told him the instructions that had been given by Mr. Grubbs, and Wallace reduced them to writing. A blank was left in the will for the name of an executor. Before this was filled John Wallace came into the room, and in the presence of all three the will was read over to the testator. The witnesses wanted to know whom he would name as executor. Mr. Grubbs thought it would do as well without, but they differed with him, and asked him how he would like Mr. McDonald, and he at once expressed his satisfaction, saying, "If he would." When the will was read over, he said it was all right. He was well acquainted with John F. McDonald, Samuel and John Wallace. When it came to signing, although a good penman, testator made his mark.

At the trial, before Collier, J., the plaintiffs offered in evidence the instrument purporting to be the will. Defendants objected on the grounds that it was not sufficiently proven, and because it appeared to have been altered. (1st assignment of error.)

The following points were submitted by plaintiffs, to which are appended the answers of the court:—

1. That there is no evidence in the case upon which the jury would be justified in finding that any undue. influence was used upon the testator, John Grubbs, in regard to his last will and testament.

Ans. "Affirmed." (5th assignment.)

8. The testimony as to the physical and mental condition of John Grubbs, before and after the execution of the will, and the testimony as to his previous statements of the way in which he proposed to dispose of his property, becomes entirely immaterial and irrelevant, if the jury believe McDonald, John and Samuel Wallace.

Ans. "Affirmed." (6th assignment.)

The following were among the points of defendants, with the answers of the court thereto:—

3. That one may be able to recognise an acquaintance, to answer questions rationally, and yet be incapable of exercising the connected thought, judgment and reflection necessary to execute a valid will.

Ans. "Affirmed."

4. That where one is under the influence of narcotic poison, such as morphia, the tests of intelligence suggested in this point, viz., the recognition of an acquaintance and the ability to answer questions rationally, are to be received with greater caution.

Ans. "If the jury find the fact to be as stated in this point, they must take it with the other facts they find in the case, to enable them to determine the testamentary capacity of the testator." (7th assignment.)

[Grubbs v. McDonald.]

In the general charge, the court, inter alia, said:—

"The paper has been admitted in evidence to you as the last will of the deceased. This makes a prima facie case for the plaintiffs, and unless the paper is impeached successfully, your verdict should be for the plaintiffs. But the defendants do impeach the validity of the will, on the ground of want of testamentary capacity in the testator to dispose of his property by will.

["It is alleged that at the time the will was signed, the testator was in a dying condition, and unconscious of his act, and of this the defendants must satisfy you from the weight of the evidence. The burden of proof is upon them.] (3d assignment.)

"In conclusion, you will confine yourselves to the single question of the testator's capacity to make the will; for there is no sufficient evidence to justify you in finding that undue influence was used to procure the making of the alleged will; [and in weighing the evidence, should you think it doubtful or balanced, you ought to incline in favor of testamentary capacity; that is, in favor of the plaintiffs."] (4th assignment.)

Verdict for plaintiffs; when defendants took this writ, and, inter alia, alleged that the court erred as set forth above.

*M. W. Acheson* and *R. E. Stewart*, for plaintiffs in error.— The alleged testamentary writing, when produced in court, had the name of John Grubbs subscribed thereto, with a seal affixed to his name, and a mark, with the words "his mark." But it appears from the testimony of the subscribing witnesses that when they left the bedside of the dying man, the paper was in a very different condition. They admitted that after they had left the house of John Grubbs, they, or one of them, put the seal to his name and wrote the words "his mark."

It was error for the court to instruct the jury that the defendants must satisfy the jury that Mr. Grubbs was in a dying condition, and unconscious of his act at the time of the execution of the alleged will, and that the burden was upon them to show these facts. It was error also to instruct the jury that if the whole evidence left the case doubtful as to testamentary capacity, the verdict should be for the plaintiffs: Symes *v.* Green, 5 Jurist N. S. 742; 1 Redfield on Wills 50. The court erred in affirming the 8th point of plaintiffs: Rambler *v.* Tryon, 7 S. & R. 90; Irish *v.* Smith, 8 Id. 573; McTaggart *v.* Thompson, 2 Harris 149.

*John S. Ferguson* and *J. W. Over*, for defendants in error.— The will was properly admitted. It was proved by the testimony of the three subscribing witnesses. Their testimony, although not requiring it, was aided by the presumption of the testator's capacity arising from the mere evidence that he had put his mark to the paper as and for his last will and testament.

It was changed in but two particulars. When John Grubbs signed it with his ✕ the words "his mark," and the scroll seals did not appear on the paper. After the witnesses had left the house taking the will with them, they thought fit to add these words and the scrolls. By so doing they gave no additional force to the paper. It was complete without these additions. It would be a monstrous doctrine that a man's last will should be liable to be defeated by the ignorance or fraud of its custodian.

The presumption of capacity resulted from the proof of execution. As between the real parties the executor stood in the position of a stakeholder, and the fact of execution being proved, those who denied the validity of the paper had upon them the burden of proof. The pleas were undue influence, and want of testamentary capacity, and, inconsistent as such pleas are, they in effect amounted to a declaration that John Grubbs did execute the will as and for his last will, but that it ought not to operate as such, because it was either executed by him under undue influence, or because he had not at the time sufficient testamentary capacity.

The court did not err when it said that if the evidence of McDonald and the Wallaces was true, there was no sufficient evidence from which the jury could find want of testamentary capacity: Cauffman *v.* Long; 1 Norris 72.

Mr. Justice GORDON delivered the opinion of the court, November 10th 1879.

It is always better for the court to put a case to the jury on the evidence generally, rather than upon the testimony of one or more witnesses selected from the whole number sworn during trial. Such selection tends to make the case turn upon the credibility of the witnesses named, and upon a partial view of the evidence, both of which tend to weaken or exclude other testimony and circumstances of the case which should be considered.

Complaint is made that the court below, in the trial of the case in hand, fell into this error. The court, adopting the proponents' eighth point say: "The testimony as to the physical and mental condition of John Grubbs, before and after the execution of the will, and the testimony as to John Grubbs's previous statements of the way in which he proposed to dispose of his property, becomes entirely immaterial and irrelevant if the jury believe John F. McDonald, John and Samuel Wallace."

It would certainly have been better to have said, if, from the evidence, you believe that at the time of the making and execution of the will, John Grubbs was possessed of a sound mind and disposing memory, his previous and subsequent condition are not to be considered; nevertheless, on a careful examination of the evidence, we are not prepared to say that the court in the instructions, as above set forth, committed any serious error.

[Grubbs v. McDonald.]

The testimony of McDonald and the two Wallaces, who were neighbors, without either interest or prejudice, is very explicit and clear, and, especially, when considered in connection with the evidence of the attending physician, does establish, beyond a peradventure, the testamentary capacity of John Grubbs, and if believed, as it seems to have been, the jury could do no otherwise than find for the proponents.   On the other hand, the learned judge fairly submitted the testimony produced by the contestants, and left the jury to say whether or not, at the time of the making of the will, John Grubbs had testamentary capacity.   On the whole we think no injury was worked to the defendants in the disposition of this part of the case.   Neither do we discover error in any other of the court's rulings.   It is true, complaint is made, in the third and fourth assignments, that the burden of proof was thrown upon the contestants to prove want of testamentary capacity, and that the court told the jury that if, in weighing the evidence, they thought it doubtful or balanced, they ought to incline in favor of disposing ability.   But what else could the court do under the rule as laid down in Landis v. Landis, 1 Grant 248, and in many other authorities, that "the law presumes every one of full age competent to make a will, of sufficient mental capacity to do the act; and allegations to the contrary must be proved."   Testamentary capacity is the normal condition of one of full age, and the affirmative is with him who undertakes to call it in question, and this affirmative he must establish, not in a doubtful, but in a positive manner.   So complaint is made of the court in saying to the jury that there was no evidence that undue influence had been used with John Grubbs in the making of his will.   This, however, was only the fact of the case; indeed the very contrary appears.   Frank and Reed, if we credit the testimony of Dunlap and Huddle, could not muster courage to propound their desires with reference to the property to their father personally, but asked these persons to suggest the matter for them.   This they did in a very cautious manner, and nothing came of it.   The old man seems to have had a very positive will of his own, and manifested a disposition to exercise it in strict accordance with his own ideas.

Finally, we notice the objection to the will itself as evidence; it was said to be altered in a material manner, after its execution by Grubbs, and in this manner its effect as a testamentary paper destroyed.   This is an extraordinary proposition, for a will, unlike a deed, has but a single party, and the only thing to ascertain is what that party desired concerning the disposition of his property. The idea, therefore, that any one, by unwarranted interpolations or alterations, could defeat such will, is certainly novel.   We might indeed, imagine a case where the mutilation or alteration of a testament was so great as to render it impossible to say what the will of the testator had been, and, so, as evidence of such will the paper

10 NORRIS—16

[Grubbs v. McDonald.]

would be worthless. Such, however, is not the case in hand. The will, as produced, is found to have the name John Grubbs, with his mark, appended thereto; over and below the mark, in the ordinary manner appear the words "his mark;" there is also a seal attached. These last, that is, the words "his mark" and the seal, are the alterations complained of. They were made by McDonald under the supposition that they were parts of a necessary legal form, found in his form book, and so, in his simplicity he added them. It will be seen, however, that these additions are wholly immaterial. The will, without them, was well executed under the Act of Assembly, and they certainly do not obscure the intent of the testator or render doubtful the intended disposition of his property.

We conclude this case was well and properly tried, and must be affirmed; accordingly the judgment is now affirmed.