## Geho's Estate.

Argued November 26, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*George F. Lowenthal,* with him *Emerson B. Rasbridge,* for appellant.

*Geo. B. Balmer,* with him *John W. Forry* and *Zieber & Snyder,* for appellee.

OPINION BY MR. JUSTICE MAXEY, January 6, 1941:

Ellsworth Geho died on April 28, 1938, at the age of 75 years, leaving a personal estate of about $17,000. In his will dated December 30, 1937, he left $25.00 to his only child, Helen Hutton, the appellant, and directed that the residue of his real and personal estate be equally divided among two nieces and three nephews. The will was duly probated and this appeal was taken by decedent's daughter from the order of the Register of Wills probating the will. The contestant requested the Orphans' Court to award an issue d. v. n. An answer was filed by the proponent and after hearing testimony on the issue of undue influence raised, the court dismissed the appeal. The allegation of testamentary incapacity was abandoned by the appellant. On the part of the proponent the record of probate was admitted in evidence. Proponent then rested.

The contestant offered evidence that the testator became ill in November, 1937, and from that time until his death he was visited on a number of occasions by his niece, Mrs. Enola Klapp (a legatee). She visited him twice a month until January and once a month up until two or three weeks before his death. Because of his illness the testator did not go up to his room on the

third floor of the Reeser house (where he boarded), and always received Mrs. Klapp in the first floor living room. After each one of five of such visits she took the testator into the vestibule and had five minute conversations with him. On one occasion, according to the testimony of Paul Reeser, Mrs. Klapp "had her arm around his [the testator's] neck and there was a remark made by the woman that the daughter had enough, that he should give some money toward Harry Barr" (a nephew and legatee). Reeser further testified that after Mrs. Klapp's departure the testator came into the living room and referred to "Ed" Barr (a nephew of the decedent) as being "a damn drunk . . . and he wouldn't give the rest of them any either, that they were no good. . . ." This same witness (with whom the decedent had boarded for about five or six years) testified that decedent said to him: "Mrs. Klapp had told him that Mrs. Hutton had plenty of money and that she didn't need any, and that she (Mrs. Klapp) wanted him to do what she wanted him to, and he wouldn't do it. . . ." Mrs. Paul Reeser testified that in November, 1937, the decedent told her "he wouldn't give the Barr brothers 'any of his money to drink away'" and that he made similar statements to her five or six times prior to his death. Mrs. Ida Walk, whose deceased sister had been testator's wife, testified that the decedent told her that "Ed" Barr "will never get a cent of mine." At another time, according to Mrs. Walk, the decedent said to her: "I am sort of worried; someone tells me I shouldn't will her (his daughter) anything, but she is my child, I should do something for her, it is my own flesh and blood."

The court below held that the evidence offered by the contestant was not sufficient to justify the awarding of an issue d. v. n. and the appeal was dismissed. The appellant's contention is that "the court below erred in giving evidential weight to the probate record." Appellant relied upon *Szmahl's Est.*, 335 Pa. 89, 6 A. 2d 267. In that case proponent offered in evidence the

probate of the will and then rested. Contestants, without offering any evidence, also rested, it being their contention that proponent had not established the validity of the will. The court dismissed the petition of the contestants. Upon appeal this court affirmed the order of dismissal, saying, through Mr. Justice STERN: "We hold, therefore, that the proponent may stand upon a decree of probate as sufficient to sustain the will unless testimony is produced by either party or at the instance of the court, but if such testimony is produced the probate is not to be accorded any evidential value, except by agreement of the parties. In the present case, no testimony whatever having been offered, the probate stands as a binding judicial decision in rem." Of the statement just quoted Judge MARX of the court below said: "It would appear that this statement went beyond the necessities of that case and is not applicable . . . to the facts of this case. Here the probate . . . established execution and that is not disputed. Testamentary capacity is presumed and admitted. . . . Must it follow that if there is a scintilla of testimony supporting the charge of undue influence, execution must be established by testimony."

Proof of the fact of the probate of a will does not upon an appeal from the probate have any *evidential* value, except as stated in *Szmahl's Est.* (supra), but it does have *procedural* value, for it raises a presumption of the will's validity and this presumption becomes a challenge for *proof* addressed to the challenger of the will. We said in *Watkins v. Prudential Ins. Co.,* 315 Pa. 497, 173 A. 644: "Presumptions are not evidence [p. 500]. . . . They are not fact suppliers; they are guideposts indicating whence proof must come [p. 504]."

The learned court below correctly interpreted the phrase "such testimony" as used in *Szmahl's Est.* (supra), as meaning testimony of *sufficient probative value to make out a prima facie case against the will.* The proper practice upon appeals from the probate of a

will is to offer the register's record of probate, including the will. Then the burden of coming forward with proof* shifts to the contestants. See *Plott's Est.*, 335 Pa. 81, 5 A. 2d 901. This burden of proof does not shift back to the proponents of the will until the contestants have offered evidence of such probative value in support of their allegations against the will, that if it stood uncontradicted it would upon an issue being awarded support a verdict against the will. See *Hile's Est.*, 310 Pa. 541, 544, 166 A. 575. The evidence here falls far short of this required standard of proof. Contestant's evidence at its face value amounted to nothing more than proof that one legatee, Mrs. Klapp, *tried* to influence the testator against his daughter and in favor of his nephew, Harry Barr, and that the decedent had stated a few times that he would not leave any money to the brothers Barr. Evidence of such attempts to influence a testator and of such loose and unbinding declarations by a testator do not even tend to show that when the

---

* In the case of *Abrath v. N. E. Ry. Co.*, 32 W. R. 50, 53, Lord Justice BOWEN said: "In order to make my opinion clear, I should like to say shortly how I understand the term 'burden of proof.' In every lawsuit somebody must go on with it; the plaintiff is the first to begin, and if he does nothing he fails. If he makes a prima facie case, and nothing is done by the other side to answer it, the defendant fails. The test, therefore, as to burden of proof is simply to consider which party would be successful if no evidence at all was given, or if no more evidence was given than is given at this particular point of the case; because it is obvious that during the controversy in the litigation there are points at which the onus of proof shifts, and at which the tribunal must say, if the case stopped there, that it must be decided in a particular way. Such being the test, it is not a burden which rests forever on the person on whom it is first cast, but as soon as he, in his turn, finds evidence which, prima facie, rebuts the evidence against which he is contending, the burden shifts until again there is evidence which satisfies the demand. Now, that being so, the question as to onus of proof is only a rule for deciding on whom the obligation rests of going further, if he wishes to win." See *Henes v. McGovern, Admr.*, 317 Pa. 302, 310, 176 A. 503.

testator was in the act of making his testament his mind was subjugated to a will stronger than his own. See *Tawney v. Long,* 76 Pa. 106. We said in *Keen's Est.,* 299 Pa. 430, 435, 149 A. 737: " 'In order to constitute undue influence sufficient to void a will, there must be imprisonment of the body or mind, . . . fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery, or physical or moral coercion, to such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of the will': *Phillips' Est.,* 244 Pa. 35, 43 [90 A. 457], [citing other cases]. . . . 'To sustain allegations of undue influence, contestants must show that testator's mind was under its control at the time and in the very act of making his will': *Tetlow's Est.,* 269 Pa. 486, 487 [112 A. 758]."

The decree is affirmed at appellant's cost.