Minnick, Appellant, *v.* Johnstone et al.

Argued April 25, 1941. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Patterson and Parker, JJ.

*Harry M. Sablosky,* with him *Herman E. Wenograd,* for appellant.

*E. Arnold Forrest,* for appellee, was not heard.

Opinion by Mr. Justice Maxey, May 12, 1941:

This is an appeal from the decree of the court below dismissing a bill in equity which prayed for an order compelling the defendants to convey to plaintiff certain premises in Conshohocken, Montgomery County.

On April 4, 1939, plaintiff filed her bill alleging that she was the daughter and sole heir of Walter W. Morris, who died intestate on March 11, 1939, and who prior

18

to July 9, 1938, owned the property valued at $5,000, in controversy. Morris had twice married. Plaintiff was the only child of the first marriage, and defendant, Edna E. Johnstone, was the granddaughter of Morris' second wife. George Johnstone, the other defendant, is Edna's husband. Morris's second wife, whom he married on July 19, 1910, died in November, 1935, and from that time until his death defendants lived with him and took care of him. Morris had a slight stroke in 1933 which caused partial paralysis of his right side. However, he continued working until 1936, when he stopped working and thereafter received a pension of $32.00 a month from his employer. The court below found as a fact that plaintiff, who resided in New Jersey, rarely visited her father and he seldom visited her.

In the bill to set aside the transfer of the premises which Morris conveyed to defendants on July 9, 1938, it is alleged that the defendants, "by fraud and artifice, unduly influenced the said decedent to convey to them the real estate described", that at the time of the conveyance the decedent was seventy years of age, that for a considerable time prior to July 8, 1938, and at that time Morris was "so ailing in mind and body that he was unable to comprehend the nature and character of his acts and was easily subject to influence and suggestions," and that, at the time of the conveyance, he "was dominated and controlled by the defendants, and was dependent upon them for care and service." Plaintiff also pleaded that the "said real estate constituted the bulk of decedent's estate at the time of the said conveyance and was worth $7,000.00", and that the conveyance "was fraudulent and without consideration."

The court found as facts that Morris "was very fond of the defendants", who cared for him during his later years when he was very much in need of attention, "that it was solely the love and affection that he bore toward the defendants which caused Morris to convey the prop-

erty to them, . . . that Morris at no time had any delusions or hallucinations, or was demented, that at the time of his death Morris was senile and had been to some degree senile for sometime previous to his death and as far back as the spring of 1938, that at the date of the deed in question, however, the degree of Morris' senility was not severe and consisted in carelessness about his personal appearance ' . ., that he had lost interest in talking for talks sake but had not lost interest in matters of importance to himself, that he was compos mentis on the day of the deed, fully understood what he was doing, and able to exercise sound judgment," and "that as a matter of fact no confidential relationship existed between Morris and the defendants." Since these findings of fact are supported by competent testimony we cannot disturb them.

The testimony on which plaintiff relied was that of a physician who had never seen the deceased and who bases his "expert opinion" on the testimony he had heard in court about the deceased's stroke six years before his death and on the death certificate which stated the cause of death to be "cerebro spinal arterio sclerosis senile dementia."

In behalf of the defendants, the physician who had attended the deceased both before and after he signed the deed in question and who witnessed the signing of the deed, testified that despite the hardening of Morris' arteries and his cerebral hemorrhage "his judgment [at the time of signing the deed] apparently was as clear as any man might need to have to transact his business affairs." The Justice of the Peace who took Morris' acknowledgment of the deed, testified that he asked Morris: "You understand this is a transfer of your property from yourself to Edna and George Johnstone," and he said "Yes." He noticed nothing "abnormal" about Morris' actions except that "he could not write" without assistance, owing to his physical

condition. There was also convincing testimony by other lay witnesses that Morris was mentally competent when he signed and acknowledged this deed.

The same physician who witnessed the deed also signed the death certificate in which "senile dementia" was named as the cause of death. He testified that he "did not intend to say it to be the cause of death" and that "the diagnosis of dementia should be corrected." He admitted that Morris had "an obscurity of the mind, but", he added, "that goes with cerebral and spinal arterio sclerosis".

The court below found as a fact that no confidential relationship existed between Morris and the defendants. On this point the court aptly said: "The only business affair, apparently, in which either of the defendants acted for Morris was when Mrs. Johnstone obtained the money from the bank to pay the sewer lien against the property. It is true that while Morris said to Fairlie that George Johnstone, Jr., was to act for him in the lien matter, yet the fact is that all three conversed together, Morris made the decision, and Edna Johnstone, who apparently took no part in reaching the decision, obtained the money from the bank and paid the lien. One such isolated transaction is certainly not sufficient evidence upon which to base a finding that the Johnstones were acting in any sort of fiduciary capacity for Morris or that they were handling his business affairs for him."

This court in *Leedom v. Palmer*, 274 Pa. 22, 26, 117 A. 410, held: "Where undue influence and incompetency do not appear, and the relation between the parties is not one ordinarily known as confidential in law, the evidence to sustain a confidential relation must be certain; it cannot arise from suspicion or from infrequent or unrelated acts." What this court said in *Bauman v. Reithel et ux.*, 302 Pa. 239, 153 A. 339, is applicable to the instant case: "The testimony did not disclose any such confidential relation as to shift to defendants

the duty to show the honesty of the transaction. Even had the contrary been true, the findings would justify the affirmative conclusion that no undue persuasion was resorted to, and that the contract was the free, voluntary and intelligent act of" the grantor. For further discussion of the questions of undue influence and confidential relationship, see the opinions of the court in the following recent cases: *Pledge's Estate*, 340 Pa. 529, 17 A. 2d 334; *Geho's Estate*, 340 Pa. 412, 17 A. 2d 342; *Koleff's Estate*, 340 Pa. 423, 16 A. 2d 384.

The decree is affirmed at appellant's cost.