## Cressman Estate.

Argued January 12, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Benjamin H. Linton,* with him *Gordon H. Luckenbill,* for appellants.

*Webster S. Achey,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 22, 1943:

This is an appeal from the action of the Orphans' Court of Bucks County in dismissing appellants' petition for an issue devisavit vel non. The will challenged was that of Charles N. Cressman, who died on December 21, 1940, aged 79 years, and it was executed on November 28, 1940.

The prayer of all three children of the decedent, as caveators, was for a precept directing an issue to be framed to determine:

"(a) Whether at the time of the execution of the paper writing, on November 28, 1940, the said Charles

N. Cressman was of sound and disposing mind, memory and understanding and possessed of testamentary capacity. (b) Whether the said paper writing dated November 28, 1940, was procured by undue influence, duress and constraint practiced upon the said decedent, Charles N. Cressman, by Rose B. Cressman, his wife."

It was stipulated and agreed by counsel for the proponents and for the caveators that the testimony taken before the Register of Wills should be considered by the Orphans' Court in this proceeding to have the same force and effect as though it had been taken before the court, de novo, with the right to either proponents or caveators to supplement the record with such additional testimony as they might deem material in the case. In pursuance of this agreement, some additional testimony was subsequently taken before the court, sitting in banc.

The decedent was for many years and until his retirement in 1933 engaged in the business of manufacturing cigars, having a large and perhaps dominant interest in certain "cigar companies". In 1931 his estate was worth about $500,000. His first wife died on August 31, 1939. The caveators are all his children by this wife. There were no other children. On September 3, 1940, he married Rose Beer, who then resided with him until his death and who is the proponent of this challenged will. She had been in his employ since 1905 and for many years she had been his secretary.

Two weeks before his marriage to Rose Beer, the decedent executed a third will similar in content to two former wills he had had prepared after his first wife's death, but the first of which he did not execute, and in this "third will" he made a bequest to Rose Beer of $75,000. (In the first and second wills the bequests to Miss Beer had been $5000 and $25,000 respectively.) The then Miss Beer typed the first two wills. The second will was executed in November, 1939.

During the decedent's illness on November 27, 1940, he sent for his attorney, Robert H. Grim, Esq., and

asked him to prepare another will (this was the third will), and he gave his attorney instructions for its preparation. His wife (the proponent) asked if she should leave the room and Mr. Cressman replied in the negative. He then said to his attorney: "I have given this matter a lot of thought and a lot of attention, and I know exactly what I am doing and I have reasons for it". He also spoke of having supported one son "practically all his life" and that he had supported another son and "we always got along fine but this time he will have to more or less see for himself". As to his married daughter, he said: "Bill (her husband) can well afford to take care of Marion, there is no financial trouble there."

The testator said to his attorney at the time that his estate "would be about $150,000," and that he was leaving everything to Rose (Mrs. Cressman) because he was not certain there would be enough money to last. He added: "I want her to remember she is Mrs. Charles N. Cressman and it is going to cost her money to live. If it costs the way it cost me in the past, it is not going to last for many years". He stated that he wanted to be certain that his widow "was going to be taken care of". Attorney Grim prepared the will according to instructions and delivered it to the testator on the following morning. The testator read it and declared: "This will is exactly what I want". The attorney then left to keep an engagement and on that afternoon pursuant to arrangements made by the testator, through his wife, Dr. Herman Grim, his attending physician and long-time friend, and Samuel Cressman, a banker and also a long-time friend of the testator, and also the nurse, Ruth Greisamer, witnessed the execution of the will by Mr. Cressman.

The Court below found from the testimony that when the testator executed his will he was of sound mind and disposing memory, with a full and intelligent knowledge of the act he was engaged in and that he had a full knowledge of his possessions, these being the require-

ments set forth in *Wilson v. Mitchell*, 101 Pa. 495, 502, and in a consistent line of applicable cases. See Plege's Estate, 340 Pa. 529, 17 A2d 334. The Court below correctly held: "Where a will was properly executed in every particular, a presumption of testamentary capacity and lack of undue influence arises, compelling evidence to upset the will, since the law favors its validity, unless it appears that the testator for some time prior to its execution has been mentally incapable of transacting business, in which event the burden of proof is on the proponent of the contested will. *Landis v. Landis*, 1 Grant, 248; *Wertheimer's Estate*, 286 Pa. 155, *Olshefski's Estate*, 337 Pa. 420, 422."

In the instant case the contestants completely failed to prove any lack of testamentary capacity on the part of the testator. That this testator was in full possession of his mental faculties and knew exactly what he was doing is clear from this record.

There was equally a failure to sustain the burden of proof resting upon the contestants on the question of the alleged undue influence exercised upon the testator's mind. We said in *Hook's Estate*, 207 Pa. 203, 56 A. 428: "To set aside a will on this ground [undue influence] where the testator is in full possession of his faculties and his testamentary capacity admitted or established, the evidence must be clear and strong. Mere opinions or suspicions or belief not founded on facts testified to will not be sufficient: *Englert v. Englert*, 198 Pa. 326." We applied this standard of proof in *Geho's Estate*, 340 Pa. 412, 417, 17 A2d 342, and in many other cases. We said in *Tetlow's Estate*, 269 Pa. 486, 487, 112 A. 758: "To sustain allegations of undue influence, contestants must show that testator's mind was under his control at the time and in the very act of making his will". See also *Phillips' Estate*, 244 Pa. 35, 43, 90 A. 457.

There was nothing shown on this record as to the personal relationship existing between the testator and his wife before their marriage and nothing shown as to

their confidential relationship at any time which supports in any degree the allegation of undue influence used by the proponent of this will on the mind of the testator. The Court below pertinently stated: "As Rose Beer, Mrs. Cressman entered the employ of the decedent in 1905, and was his confidential secretary until he married her on September 3, 1940. She grew up with the business of the decedent's firm, Allen R. Cressman Sons and, at the height of the firm's business activities, had charge of the entire office. She was a faithful and conscientious employee and was in a position to know all of the decedent's financial affairs. After the firm's dissolution and the decedent's retirement, she remained with him as his secretary and looked after his financial and business interests. There is no testimony, whatsoever, which would warrant any reasonable inference that proponent at any time exercised or attempted to exercise, any undue influence, within the meaning of that expression as hereinbefore defined, upon the decedent. On the contrary, the uncontradicted testimony is to the effect that Mr. Cressman was a man of strong character, determined and forceful. He had a strong personality, with a will and a mind of his own."

We said in *Eble v. Fidelity Title & Trust Company, Exr. & Trustee, et al.,* 238 Pa. 585, 86 A. 485: "Undue influence to affect a will must be such as subjugates the mind of the testator to the will of the person operating upon it: *Tawney v. Long,* 76 Pa. 106. Where the charge is that undue influence has been exerted on a strong and free mind, nothing short of direct, clear and convincing proof of fraud or coercion will avail: *Logan's Est.,* 195 Pa. 282."

In *Mark's Estate,* 298 Pa. 285, 148 A. 297, we said: "It is his [the hearing judge's] duty, after weighing the evidence impartially, [on a petition for the awarding of an issue d. v. n.], to refuse to present the question to a jury, unless he feels the ends of justice call for a verdict against the will, or he is so uncertain on this point

that he could conscionably sustain a finding either way on one or more of the controlling issues involved". In *Central Trust Co. v. Boyer,* 308 Pa. 402, 162 A. 806, this court speaking through Mr. Justice DREW, said: "It is an extremely serious thing to set aside a man's last will and testament. His property is his own and he can dispose of it as he pleases, in life, and after death, by means of his will. The concern of the law is the protection of the testator and the legal objects of his bounty, to see that he has testamentary capacity and is not overreached by designing persons. To this end, in the trial of an issue to determine the validity of a will, the judge sits as a chancellor (*McCormick v. McCormick,* 194 Pa. 107; *Roberts v. Clemens,* 202 Pa. 198); the evidence is addressed quite as much to him as to the jury, and he cannot permit the jury to do what he, as a chancellor, would not do (*Caughey v. Bridenbaugh,* 208 Pa. 414)".

The Court below correctly held that the evidence submitted by the caveators on both the issues presented was so unsatisfactory that any verdict which a jury might render thereon in their favor could not be sustained. The award of an issue was properly refused.

Decree affirmed at appellants' cost.